**Patrick Edward MOEVES, Movant,**

v.

**KENTUCKY BAR ASSOCIATION,
Respondent.**

No. 2012–SC–000302–KB.

Supreme Court of Kentucky.

Aug. 23, 2012.

## OPINION AND ORDER

Patrick Edward Moeves moves to withdraw his membership from the Kentucky Bar Association (KBA) under terms of permanent disbarment pursuant to Supreme Court Rule (SCR) 3.480(3). Moeves has previously been suspended for unethical conduct and is again facing several charges of unprofessional and unethical behavior. The KBA has no objection to Moeves's motion to withdraw under terms of permanent disbarment. Given Moeves's disciplinary history and the charges pending,

we find Moeves should be permanently disbarred and grant his motion to withdraw under terms of permanent disbarment. Moeves, whose KBA number is 86081 and whose last known bar roster address is 1717 Dixie Highway, Suite 340, Ft. Wright, Kentucky 41011, was admitted to the practice of law in the Commonwealth of Kentucky on October 13, 1995.

## Disciplinary History

On September 16, 2008, the Supreme Court of Ohio entered an order prohibiting Moeves from practicing law in Ohio for two years for violating seven provisions of the Ohio Rules of Professional Conduct. *Cincinnati Bar Ass'n v. Mullaney,* 119 Ohio St.3d 412, 894 N.E.2d 1210 (2008). On October 1, 2009, this Court imposed reciprocal discipline and suspended Moeves from practice for one year, stayed for two years on the condition that he receive no further charges within two years of the Order. *Kentucky Bar Association v. Patrick Edward Moeves,* 297 S.W.3d 552 (Ky.2009). However, prior to the conclusion of the two-year stay, the Inquiry Commission brought two charges against Moeves: (1) a seven-count charge on July 1, 2010 in KBA file 18033, and (2) a nine-count charge on September 30, 2010 in KBA file 18113. These two charges violated the terms of Moeves's conditional discipline and on March 24, 2011, this Court suspended Moeves from the practice for one year pursuant to the 2009 Order. *Kentucky Bar Association v. Moeves,* 336 S.W.3d 90 (Ky.2011).

At that same time, the Court also temporarily suspended Moeves pursuant to SCR 3.165(*l* )(a) and (b) upon finding probable cause that Moeves has misappropriated or otherwise been improperly dealing with funds held for others and his conduct posed a substantial threat of harm to his clients or to the public. *Id.* The probable

cause was based on Moeves's conduct in KBA files 18113, 18033, and 19254, which are further discussed below.

## KBA File 18113

In September 2007, Ronda Baird hired Moeves and his law partner to represent her on federal criminal charges in Alabama and to investigate whether her accountant was embezzling money from her business. Moeves told Baird he had a forensic accountant review her business accounts and, as she had suspected, her accountant had embezzled large sums from her business, though Moeves never provided her with a report from the forensic expert. Moeves told Baird he spoke with either a judge or someone in the Mexican consulate and believed the embezzled funds were in Mexico. Baird paid Moeves for private investigators and financed numerous trips he took to Mexico allegedly to recover the money. Baird never received any reports from the supposed private investigators. On one such trip, Moeves contacted Baird and instructed her to wire $10,000.00 to "Troy Ashcroft," a man Moeves said was related to the embezzling accountant. Moeves explained that Ashcroft would be arrested as soon as he cashed the wire transfer. Troy Ashcroft, D.O. lives in Dry Ridge, Kentucky, and is Moeves's personal physician.

After Moeves made several unproductive trips to Mexico, Baird decided to accompany him but was hindered by the fact that she surrendered her passport during the federal investigation. Moeves informed Baird he was a friend of a United States Senator and for $20,000.00 the Senator would arrange for Baird to receive a new passport. Baird sent the funds but never received a passport and when she called the Senator's office, the Senator's secretary told Baird the Senator had never heard of either Moeves or Baird. When Baird confronted Moeves, he assured her that he would get a letter from the Senator regarding her passport. Baird never received the letter or a new passport.

Over time, Moeves's communication with Baird became increasingly infrequent and when she contacted Moeves's law partner to inquire about the status of her embezzlement case, the law partner informed her that he had no knowledge of the embezzlement matter. When Moeves's law firm dissolved · in March 2009, Moeves ceased representing Baird in her federal criminal matter.

Soon thereafter Baird confronted Moeves about the undocumented expenses and excess funds she paid him, in return for which he had done little or no work, and he agreed to refund the monies. Moeves refunded to Baird $123,363.00 and promised an additional $315,000.00, though it is unclear whether this amount has been repaid. In late 2009, Baird hired an Alabama attorney to bring a civil suit against Moeves for theft and on October 19, 2009, she filed a Bar complaint against Moeves.

On September 29, 2010, the KBA issued a nine-count charge against Moeves, alleging he violated SCR 3.130(1.4)(a) (keep client reasonably informed); SCR 3.130(1.4)(b) (explain matter so client may make informed decision); SCR 3.130(1.5)(a) (charge a reasonable fee);[1] SCR 3.130(1.15)(a) (hold client property separate);[2] SCR 3.130(1.15)(b) (notify of receipt and deliver to client or third party funds in which client or third party has an

---

1. Based on conduct and the rules prior to the 2009 Amendments to the Rules of Professional Conduct (the 2009 Amendments).

2. Based on conduct and the rules prior to the 2009 Amendments.

interest);[3] SCR 3.130(1.16)(d) (take steps to protect client interest upon termination);[4] SCR 3.130(8.3)(a) (violate the Rules of Professional Conduct);[5] SCR 3.130(8.3)(c) and SCR 3.130(8.4)(c) (engage in conduct involving dishonesty, fraud, deceit or misrepresentation);[6] and SCR 3.130(8.3)(d) (state or imply ability to improperly influence government official).[7] Moeves admits his conduct during his representation of Baird violated the Rules of Professional Conduct.

## KBA File 18033

In September, 2008, the same Ronda Baird called Moeves and his law partner to request their assistance on behalf of her employee, Rodolfo Contreras–Leos, who was arrested for possession of a forged driver's license. Despite not being licensed to practice law in Alabama, Moeves (1) contacted the U.S. Attorney's Office in Montgomery, Alabama, as well as local agents from the United States Department of Labor, a former agent for Immigration and Customs Enforcement, and the local prosecutor's office in Alabama to discuss the case; (2) negotiated with the prosecutor's office for the return of the contents of Contreras–Leos's vehicle, which may have implicated Baird; and (3) flew with his partner and Baird to Alabama and met with Contreras–Leos in his jail cell for several hours to discuss his case.

After that meeting, Baird, Moeves and his partner went to the bank, where Baird paid Moeves $10,000.00 in cash and $12,000.00 by cashier's check to represent Contreras–Leos. There was no written or oral agreement for this representation and none of the funds were placed in Moeves's escrow account. Moeves and his partner did not obtain *pro hac vice* admission in Alabama and never appeared in court on behalf of Contreras–Leos. Alabama attorney Keith Rogers, associated as co-counsel, conducted Contreras–Leos's entire defense. Moeves and his partner assured Baird and Contreras–Leos's relatives the $22,000.00 would cover Rogers's fee. Rogers has yet to be paid for representing Contreras–Leos.

After Moeves and his partner disassociated in March 2009, Baird and Contreras–Leos's relatives requested Moeves repay the unearned portion of the fee. Moeves offered to repay all $22,000.00 but has failed to do so. On September 23, 2009, Ledell and Carmen Rodriguez, Contreras–Leos's parents, filed a Bar complaint against Moeves, to which Moeves responded, erroneously claiming, "The only monies paid to the firm [ ] was the initial check of $12,000.00 . . . ." Additionally, during the time Moeves and his law partners operated their firm, Moeves did not maintain professional liability insurance and did not report his participation in a limited liability firm on his yearly dues statements to the KBA.

The KBA issued a seven-count charge against Moeves on July 1, 2010, alleging he violated SCR 3.130(1.15)(a) (hold client property separate); SCR 3.130(1.16)(d) (take steps to protect client interest upon termination); SCR 3.130(3.4)(c) (disobey obligation under the rules of a tribunal); SCR 3.130(5.5)(a) (practice law in a juris-

---

3. Based on conduct and the rules prior to the 2009 Amendments.

4. Based on conduct and the rules prior to the 2009 Amendments.

5. Based on conduct and the rules prior to the 2009 Amendments.

6. Based on conduct and the rules both before and after the 2009 Amendments. SCR 3.130(8.3)(c) was renumbered SCR 3.130(8.4)(c) as part of the 2009 Amendments.

7. Based on conduct and the rules prior to the 2009 Amendments.

diction in violation of the regulation of the legal profession in that jurisdiction); SCR 3.130(8.1)(a) (make false statement of material fact in a disciplinary matter); SCR 3.130(8.3)(a) (violate the Rules of Professional Conduct);[8] SCR 3.130(8.3)(c) (engage in conduct involving dishonesty, fraud, deceit or misrepresentation).[9] Moeves admits his conduct during his representation of Contreras–Leos violated the Rules of Professional Conduct.

## KBA File 19254

In December 2007, Moeves began representing Joyce Elliott in a lawsuit against Cahill Surveyors (Cahill) regarding a survey Cahill conducted on property belonging to Elliott's deceased husband. Moeves told Elliot a lawsuit had been filed and they had a court date of October 13 or 14, 2009. A week prior to the court date, Moeves informed Elliott they had reached a settlement. When no settlement agreement was produced, Moeves said it was because Cahill had requested additional time. Nothing more ever happened in this lawsuit, for which Elliott paid Moeves a total of $9,911.58.

In early 2010, Moeves recommended Elliott file a bad faith lawsuit against Cahill and its insurance companies for failing to perform on the settlement agreement that had allegedly been reached. Elliot paid Moeves $7.500.00 to begin work on the bad faith lawsuit. Moeves told Elliot he filed the suit and a bench trial would be held. However, he later told her a "judge panel" would hear the case instead, the fee for which was $10,000.00, to be paid equally by the parties. Elliott accordingly paid Moeves $5,000.00 on May 6, 2010. When Moeves told her the opposing party failed

to pay its half and she would have to split that cost with an insurance company, Elliott paid Moeves another $2,501.75. On May 21, 2010, Elliott paid Moeves a $5,000.00 "fee for Judge Douglas Stevens," whose role in the case has not been clarified.

Elliott was eventually informed that a final settlement had been reached, under which she would receive $1.5 million, and that her expenses would be reimbursed if they exceeded $75,000.00. To meet this threshold, Elliott paid Moeves an additional $23,282.42. As part of the purported settlement, Moeves gave Elliott an Agreed Order of Mediated Dismissal and a Release and Indemnity Agreement. The Agreed Order of Mediated Dismissal had a "Mediated Case No.: 10–CI–000912" and spaces for "D. Enre' Stevens, Mediator," the "Judge, Eastern District of the Commonwealth of Kentucky," and Cahill's counsel to sign. The Release and Indemnity Agreement contained similar indicia of authenticity, including notarization.

Moeves told Elliott she would receive the reimbursement check of $75,000.00 by July 31,–2010 and the settlement check by August 15, 2010. When Elliott did not receive either payment, Moeves said he would seek an order for payment from Judge Bunning on September 20, 2010. When Elliott still did not receive any payments, Moeves informed her a court mediator, D. Enre' Stevens, had been appointed and had given the insurance company a deadline of October 14, 2010.

Elliott paid Moeves a total of $62,650.17, which he did not put in an escrow account. When Elliott contacted the people named in the Order of Mediated Dismissal and

---

8. Based on the rule prior to the 2009 Amendments. SCR 3.130(8.3)(a) was renumbered SCR 3.130(8.4)(a) as part of the 2009 Amendments.

9. Based on the rule prior to the 2009 Amendments. SCR 3.130(8.3)(c) was renumbered SCR 3.130(8.4)(c) as part of the 2009 Amendments.

Release and Indemnity Agreement provided by Moeves, she discovered they either did not exist or did not have any knowledge of the matter. Elliott filed a Bar complaint against Moeves on October 18, 2010.

On February 28, 2011, the KBA issued a four-count charge against Moeves, alleging he violated SCR 3.130(1.15)(a) (hold client property separate); SCR 3.130(8.1)(b) (fail to respond to demand for information in disciplinary matter); SCR 3.130(8.3)(b) (commit criminal act that reflects adversely on honesty, trustworthiness or fitness as lawyer); [10] and SCR 3.130(8.3)(c) (engage in conduct involving dishonesty, fraud, deceit or misrepresentation).[11] Moeves admits his conduct during his representation of Elliott violated the Rules of Professional Conduct.

## KBA File 19402

In 2010 Moeves represented Jackie Bohanan in a criminal matter in Boone Circuit Court and under a plea agreement Bohanan was required to pay over $16,000.00 in restitution prior to final sentencing. According to Bohanan, Moeves told him the Commonwealth's Attorney for the case had agreed to accept $4,000.00 as payment in full of the restitution and so Bohanan wired $4.000.00 to Moeves. Moeves neither placed the funds in escrow nor paid them to either the Commonwealth's Attorney or the court. The Commonwealth's Attorney for the case denied engaging in discussion regarding a reduced payment of restitution. Further,

10. Based on rule prior to the 2009 Amendments. SCR 3.130(8.3)(b) was renumbered SCR 3.130(8.4)(b) as part of the 2009 Amendments.

11. Based on rule prior to the 2009 Amendments. SCR 3.130(8.3)(c) was renumbered SCR 3.130(8.4)(c) as part of the 2009 Amendments.

Moeves failed to appear at Bohanan's final sentencing.

On February 23, 2011, the Inquiry Commission issued a Complaint against Moeves alleging he violated SCR 3.130(1.15)(a) (hold client property separate) and SCR 3.130(8.4)(c) (engage in conduct involving dishonesty, fraud, deceit or misrepresentation), while also warning that additional violations may be charged later. On March 3, 2011, Moeves pled guilty to one count of theft by deception over $500.00 and was sentenced to two years in prison on that count.[12] On September 1, 2011, the Inquiry Commission authorized a Charge in this file, but it has not yet been issued. Moeves admits his conduct during his representation of Bohanan violated the Rules of Professional Conduct and chooses to withdraw under terms of permanent disbarment before a Charge can be issued.

## KBA File 19464

In June 2005, Moeves was retained by Kathleen Wilson, Dennis Murray and Carol Sue Bell to represent them in the probate of their mother's estate, for which he received a total of $12,250.00. One issue in the probate matter was the distribution of Bell's portion of the estate, which totaled $40,545.50. Moeves contacted the executrix of the estate regarding the release of these funds and on October 11, 2005, he received a check for the funds, which he deposited in his escrow account. In May 2008, Moeves filed a civil action against the executrix and her husband in Boone Circuit Court. In 2009, Moeves began with-

12. On that same day Moeves also pled guilty to forgery, for which he also received two years in prison. The forgery charge is the subject of File 19467. The sentences for the forgery and theft charges were ordered to run consecutive to each other and to all other sentences on Moeves's other felony charges, for a total of eight years in prison.

drawing the funds he was holding in escrow so that eventually all that was left of Bell's portion of the estate was $299.77. Moeves was not authorized to withdraw the funds from escrow. On December 10, 2009, Moeves paid Bell $13,516.00 from his escrow account, drawing on funds held for other clients, and provided her with a copy of a letter he allegedly sent to the presiding judges of the Boone Circuit Court and the Boone Probate Court memorializing an oral request he made for partial distribution of the funds. Moeves never made such an *ex parte* request nor did he ever make a motion for partial distribution. Further, Moeves failed to inform opposing counsel of the distribution.

On January 20, 2010, Moeves wrote opposing counsel, requesting counsel agree to release the $45,545.51 because he had accidentally deposited the funds into his IOLTA account rather than an interest-bearing account. Opposing counsel declined to agree to release the funds and on February 4, 2010, Moeves moved the court to release the funds. Moeves never informed the court that he had already released a portion of the funds or that the remainder of the funds was no longer in his escrow account. The court denied the motion because the funds were part of pending litigation and ordered the funds to be moved from Moeves's IOLTA account to the Boone Circuit Clerk's account with interest credited to the funds.

In May or June 2010, Moeves informed his clients that he had a rare illness which doctors were unable to diagnose. When Bell, Murray and Wilson indicated a desire to seek other counsel Moeves encouraged them to keep him as their lawyer because it would take new counsel at least six months to become familiar with the case. Moeves assured them he would bring in co-counsel and provided several names of individuals to serve as co-counsel. However-

er, Moeves never brought in co-counsel and at least one of the names he provided was fictional.

On July 1, 2010, Moeves emailed Bell and informed her that opposing counsel would not agree to release the funds and offered to pay her the remaining $32,000.00 from his operating account, an arrangement "that can be kept between you and I knowing that you have been paid. Then I will deal with the consequences with Steve [opposing counsel] or whom ever [sic] they will be." Bell agreed to this arrangement but when she tried to cash the check drawn on Moeves's operating account the check bounced. Moeves eventually wired Bell the funds, though they did not come from Moeves's escrow account.

On July 8, 2010, opposing counsel filed a motion requesting Moeves and Bell be ordered to appear and show cause why they should not be held in contempt for failing to transfer the funds to the Boone Circuit Clerk. When the funds were still not deposited with the Clerk, opposing counsel filed a motion to review Moeves's IOLTA account. The court ordered Moeves provide his escrow account records within fifteen days. Moeves never complied with the order. When defendant later moved to dismiss the case, the court granted the motion. Moeves never informed Bell, Murray or Wilson that the case had been dismissed.

On April 16, 2012, the Inquiry Commission issued a six-count charge against Moeves, alleging he violated SCR 3.130(1.4)(a) (keep client reasonably informed); SCR 3.130(1.15)(a) (hold client property separate); SCR 3.130(1.15)(c) (keep property claimed by two people separate until dispute resolved and distribute portions not in dispute); SCR 3.130(3.4)(c) (disobey obligation under the rules of a tribunal); SCR 3.130(8.4)(b) (commit crim-

inal act that reflects adversely on honesty, trustworthiness or fitness as lawyer); and SCR 3.130(8.4)(c) (engage in conduct involving dishonesty, fraud, deceit or misrepresentation). Moeves acknowledges the Inquiry Commission had probable cause to issue the Charge and wishes to resolve the matter by withdrawing under terms of permanent disbarment.

## KBA File 19498

In January 2009, Moeves began representing John Ackerman, Jr. in several matters related to his theft from a store. Moeves received $2,500.00 to represent Ackerman on the criminal charge of felony theft, which was resolved by plea agreement. Moeves then received an initial $1,000.00 to represent Ackerman in the related civil matter, *Beck v. Ackerman*, 09–CI–00657. Moeves also agreed to represent Ackerman against a threatened subrogation suit by the insurance company that paid the claim made by the store from which Ackerman had stolen.

On the latter matter, Moeves assured Ackerman he reached an agreement with opposing counsel that would require a $5,000.00 payment on the subrogation claim if Ackerman was found liable or $1,000.00 if Ackerman was not found liable. Ackerman accepted the agreement and paid Moeves $4,000.00 to hold in escrow until and if the subrogation suit was filed.

As the *Beck* civil suit progressed, Ackerman paid Moeves an additional $3,100.00 ($2,500.00 fee and $600.00 travel) for an expert witness Moeves claimed was necessary to the case. Moeves told Ackerman he could guarantee they would win at trial if Ackerman hired this expert. Ackerman never learned the expert's name, never saw any expert reports or documentation, the case never went to trial, no expert disclosure was filed and there was never any expert testimony. The case eventual-

ly settled for $10,000.00 and was dismissed without prejudice on July 9, 2010.

In August 2010, Moeves told Ackerman he was suffering from a terminal illness, which could only be treated at the Cleveland Clinic, and he needed money to keep his law practice open while he sought treatment. Believing Moeves was still working to resolve the subrogation claim, Ackerman loaned Moeves $5,000.00. Moeves was not terminally ill and never received treatment at the Cleveland Clinic. Ackerman never received any additional information about the subrogation claim and has not been repaid the $4,000.00.

An investigation by the Kenton County Police Department revealed Moeves deposited the $4,000.00 and $2,500.00 into the Moeves Firm LLC operating account but the money was spent on items unrelated to Ackerman's representation. There was no record of the $1,000.00 or the $600.00 being deposited in any account but Moeves did negotiate the checks. Moeves was indicted for and pled guilty to theft by deception, for which he was sentenced to two years in prison.

On October 17, 2011, the Inquiry Commission issued a three-count charge against Moeves, alleging he violated SCR 3.130(1.8)(a) (enter into business transaction with client); SCR 3.130(8.4)(b) (commit criminal act that reflects adversely on honesty, trustworthiness or fitness as lawyer); and SCR 3.130(8.4)(c) (engage in conduct involving dishonesty, fraud, deceit or misrepresentation). Moeves admits his conduct during his representation of Ackerman violated the Rules of Professional Conduct.

## KBA File 19517

In January 2009, Lewis Jason Williams paid Moeves $500.00 to hire a private investigator to look into certain matters re-

lated to his case. Williams requested but never received any reports or updates from the investigator and, after Moeves was arrested in 2010 and Williams obtained his file, he discovered there was no documentation that Moeves had ever hired a private investigator. Moeves never refunded the $500.00 payment to Williams.

On April 16, 2012, the Inquiry Commission charged Moeves with violating SCR 3.130(1.16)(d) (take steps to protect client interest upon termination). Moeves acknowledges the Inquiry Commission had probable cause to issue the Charge and wishes to resolve the matter by withdrawing under terms of permanent disbarment.

### KBA File 19587

In 2008, Brian Clark paid Moeves $2,500.00 to assist him with various tax issues. Moeves later told Clark he required an additional $2,500.00, to be held in escrow pending resolution of the tax issues. Clark paid the additional fees but Moeves deposited this money into his operating account rather than his escrow account. Clark's tax issues were not resolved when Moeves was arrested in 2010 and Moeves never refunded his unearned fees.

On April 16, 2012, the Inquiry Commission charged Moeves with violating SCR 3.130(1.15)(a) (hold client property separate) and SCR 3.130(1.16)(d) (take steps to protect client interest upon termination). Moeves acknowledges the Inquiry Commission had probable cause to issue the Charge and wishes to resolve the matter by withdrawing under terms of permanent disbarment.

### KBA File 19740

In 2009, Trudy Koenig hired Moeves to file suit against her employer, the Kentucky Horse Racing Commission. Koenig signed a contract which provided for a $2,500.00 non-refundable retainer with the

fee then converting to a 25% contingency fee. Though her understanding was that she would not owe any fees other than the $2,500.00, Koenig made an additional payment of $482.25 on June 12, 2009. Moeves also advised her to borrow $25,000.00 to pay for depositions but she declined to do so.

Moeves filed Koenig's suit in June 2010 and over the next several months repeatedly assured Koenig the case was progressing, at one point telling her the judge had granted a continuance due to Moeves's alleged illness. In late 2010, Koening obtained a copy of her case file from the court clerk and found an order therein dismissing her lawsuit on August 23, 2010.

During the course of the litigation, Koenig acted as Moeves's personal driver, lent him money and purchased food and gas for him because he told her he suffered from amyotrophic lateral sclerosis (also known as ALS or Lou Gehrig's disease). Moeves did not suffer from ALS.

On October 14, 2011, the Inquiry Commission issued a three-count charge against Moeves, claiming he violated SCR 3.130(1.8)(c) (solicit a gift from a client); SCR 3.130(8.1)(b) (fail to respond to demand for information in disciplinary matter); and SCR 3.130(8.4)(c) (engage in conduct involving dishonesty, fraud, deceit or misrepresentation). Moeves admits his conduct during his representation of Koenig violated the Rules of Professional Conduct and wishes to resolve the matter by withdrawing under terms of permanent disbarment.

### KBA File 19467

On February 2, 2011, a panel of the Inquiry Commission authorized an investigation concerning allegations that Moeves, as co-executor of Elsie Colby's estate, had forged the name of his co-executor, Sena-

tor Jack Westwood, on a deed and then sold the property to a relative. In September 2011, the Commonwealth prosecuted Moeves for forgery in the second degree. As part of an agreement to settle several felony charges pending against him, Moeves pled guilty to the charge of forgery and received eight years in prison for that and other charges.

On April 4, 2012, the Inquiry Commission filed a Complaint against Moeves, claiming he violated SCR 3.130(8.4)(b) (commit criminal act that reflects adversely on honesty, trustworthiness or fitness as lawyer) and SCR 3.130(8.4)(c) (engage in conduct involving dishonesty, fraud, deceit or misrepresentation), while also warning that additional violations may be charged later. Moeves acknowledges this matter is currently pending before the KBA and seeks to resolve the matter by withdrawing under terms of permanent disbarment.

## KBA File 20007

In September 2011, the Inquiry Commission began investigating allegations that Moeves improperly filed an Answer in a civil suit on behalf of Moeves Law Firm, PLLC, despite being temporarily suspended from the practice of law. Sally and Craig Roebuck brought suit against both Moeves and Moeves Law Firm PLLC in Kenton Circuit Court in January 2011. Moeves filed his answer *pro se* and on behalf of Moeves Law Firm. Judge Martin Sheehan of the Kenton Circuit Court entered an order accepting the answer as that of Moeves individually because Moeves was permitted to file a *pro se* response on his own behalf, but rejecting the answer as that of Moeves Law Firm because Moeves was, at that time, suspended from the practice of law. The investigation of the Inquiry Commission into this matter is still open.

## KBA File 20208

Moeves represented Eddie Villegas in a dispute over a land contract. During the course of his representation of Villegas, Moeves took possession of a bulldozer and a skid loader owned by Villegas, allegedly to keep them from falling into the opposing party's hands. Moeves wrote Villegas a receipt for the equipment and promised to return it on or before April 12, 2011. Moeves was arrested in December 2010, however, and to this date Moeves has not returned Villegas's property or even told Villegas where it is located.

On April 16, 2012, the Inquiry Commission filed a charge against Moeves, alleging he violated SCR 3.130(1.16)(d) (take steps to protect client interest upon termination); SCR 3.130(8.4)(b) (commit criminal act that reflects adversely on honesty, trustworthiness or fitness as lawyer); and 3.130(8.4)(c) (engage in conduct involving dishonesty, fraud, deceit or misrepresentation). Moeves admits his conduct during his representation of Villegas violated the Rules of Professional Conduct and wishes to resolve the matter by withdrawing under terms of permanent disbarment.

## KBA File 20580

Cheryl Bryan claims she paid Moeves approximately $130,000.00 to assist her with several legal issues, including pursuing legal action against her former employer for allegedly improperly firing her, tracking and recovering money spent by her husband and his mistress, and securing proper care for her adult son Christopher, who suffers from Down Syndrome and related illnesses. Moeves improperly managed Bryan's employment suit, which was dismissed from federal court and, contrary to Moeves's claim, was never filed in state court. Moeves also never completed any work on Bryan's son's legal issues. With regards to tracking the funds taken

by Bryan's husband and his mistress, Moeves concocted stories that involved tracing the funds to Canada, New York, Minnesota, Utah, Colorado, Hawaii and Florida; locating accounts that contained several millions of dollars; possible involvement by people in the federal government; claims that the mistress had been tracked down, held in contempt, jailed and ordered to pay over $100,000.00; numerous cancelled court dates, meetings and trips; requiring funds to pay court fees, mediation fees, a yearly retainer, a bond and to create a professional Power Point presentation; and hiring various experts, investigators and co-counsel to pursue the misappropriated funds, sometimes by taking trips to various locations where the accounts were allegedly located. Moeves never provided Bryan with reports or documentation and when she pressed for details he would evade her questions and distract with a supposed breakthrough in the case.

Moeves also told Bryan he was very ill and asked her for money to fund experimental treatment he needed at a hospital in Ohio. Despite being low on cash, Bryan gave Moeves $2,000.00 for his treatment. Moeves told Bryan he entered the program but left when the treatment did not work.

Bryan claims she depleted her savings and had to dip into her IRA to cover the fees and expenses Moeves charged her and consequently she now has little money left to care for herself and her son. None of the money Bryan paid Moeves has been refunded. Nor were any of Bryan's legal matters resolved before Moeves was arrested in December 2010. The Inquiry Commission has ordered further investigation in this case.

## CONCLUSION

Moeves states that upon entry by this Court of an Order of disbarment he will never again practice law in the Commonwealth of Kentucky. The KBA has no objection to Moeves's motion to withdraw under terms of permanent disbarment. Upon examination of the record in this case and Moeves's admission of unethical conduct, we find disbarment to be the appropriate sanction and grant Moeves's motion. Moeves's appalling and reprehensible conduct in these cases goes well beyond the pale. Conduct that besmirches the dignity of the profession and harms clients who have put their trust and faith in one of its practitioners will not be tolerated.

Accordingly, it is hereby ORDERED:

1. Patrick E. Moeves is permanently disbarred from the practice of law in the Commonwealth of Kentucky;

2. Pursuant to SCR 3.450, Patrick E. Moeves is directed to pay all costs associated with these disciplinary proceedings in the amount of $1,685.79; for which execution may issue from this Court upon finality of this Opinion and Order.

3. Pursuant to SCR 3.390, Patrick E. Moeves shall, within ten (10) days from the entry of this Opinion and Order, notify all clients, in writing, of his inability to represent them; notify, in writing, all courts in which he has matters pending of his disbarment from the practice of law; and furnish copies of all letters of notice to the Executive Director of the Kentucky Bar Association. Furthermore, to the extent possible, Moeves shall immediately cancel and cease any advertising activities in which he is engaged.

All sitting. All concur.

ENTERED: August 23, 2012.

/s/ John D. Minton, Jr.

Chief Justice