**KENTUCKY BAR ASSOCIATION,**
Movant

v.

**Jeffrey M. BLUM, Respondent.**

No. 2012–SC–000825–KB.

Supreme Court of Kentucky.

April 25, 2013.

Reconsideration Denied Aug. 29, 2013.

Association Board of Governors finding him guilty of four counts of professional misconduct and recommending a 181–day suspension from the practice of law with the conditions of impairment assessment and ethics training. The professional misconduct charges stem from Blum's nearly decade-long handling of a teacher-termination dispute, which was litigated in various state and federal forums. Upon review, we adjudge Blum guilty of three of the four charges and impose the recommended discipline.

## I. KBA FILE NO. 13738.

### A. Blum's Conduct Giving Rise to the Disciplinary Charge.

In 1996, the Harlan County School Board convened an administrative tribunal to hear charges against David H. Dixon, a certified teacher at Cumberland High School within the Harlan County School District. School administrators recommended terminating Dixon's contract after discovering that he had taken inappropriate photographs of one of his female students. The tribunal unanimously found Dixon guilty of conduct unbecoming a teacher and, by a 2–1 vote, upheld the recommendation to terminate Dixon's contract.

Dixon appealed the decision to the Harlan Circuit Court. After an approximate eight-year delay, Special Judge R. Cletus Maricle, ordered the case remanded to the tribunal upon a finding that the instructions given to the tribunal by the hearing officer were erroneous and that additional mitigating factors should be considered in determining the penalty. Dixon appealed the order to the Court of Appeals, which dismissed it as premature

## OPINION AND ORDER

Jeffrey Michael Blum [1] appeals from the unanimous decision of the Kentucky Bar

---

1. Admitted to practice law in Kentucky in 1997, Kentucky Bar Association (KBA) Member No. 86811; bar roster address, 7106 Meadow Ridge Drive, Louisville, Kentucky 40218.

Following the remand order, Hearing Officer James L. Gay of the Attorney General's Division of Administrative Hearings began the process of convening another administrative tribunal by issuing a pre-hearing conference order in April 2005. In the order, Gay stated that the hearing would not be a hearing de novo because Judge Maricle's order did not authorize the taking of additional proof. Accordingly, the administrative tribunal on remand would confine its consideration to the appropriate penalty to be imposed, Dixon's guilt having been decided by the first tribunal.

Blum began representing Dixon at some time between the 1996 tribunal hearing and the Harlan Circuit Court's remand in 2004. Gay's pretrial order in 2005 was the flash point for Blum, triggering a course of conduct that led to disciplinary charges against Blum. Blum's filings throughout the course of the administrative proceedings consisted of personal attacks against Gay and his successor, Deputy Attorney General Michael Head; denunciations of incompetence and corruption in the Office of the Attorney General; and bombastic threats and arguments.

Dixon's second administrative tribunal hearing convened with Deputy Attorney General Head serving as the hearing officer. Over Blum's objection, the evidence from the first tribunal hearing was put into evidence. The second tribunal unanimously upheld Dixon's termination; and the Harlan Circuit Court upheld the termination on appeal.

Meanwhile, Blum filed a federal civil rights complaint for Dixon in the United States District Court for the Eastern District of Kentucky, London Division. In the amended complaint in that case, Blum alleged that Assistant Attorney General Head and others "framed" Dixon and "rigged" the second administrative tribunal hearing to accomplish Dixon's termination.

The federal court eventually dismissed Dixon's complaint because the statute of limitations had expired. After dismissing the action, the judge, acting on his own motion, sanctioned Blum for improper conduct during the course of the case. On appeal, the United States Court of Appeals for the Sixth Circuit affirmed the dismissal and the sanctions levied against Blum.

Blum's conduct in the course of these state administrative and judicial proceedings and federal judicial proceedings forms the basis for this disciplinary action.

## B. The Inquiry Commission Issues a Five–Count Charge Against Blum.

The Inquiry Commission issued a five-count Charge against Blum for violating:

(1) SCR 3.130–3.4(c),[2] for unrelenting personal attacks on the hearing officers, opposing counsel, and the U.S. District Court; by repeatedly pressing legal claims and filing pleadings that contained inappropriate language, claims and assertions; and by persisting in instructing opposing counsel and the U.S. District Court as to the proper procedures, despite being warned by the court that his actions were improper;

(2) SCR 3.130–3.4(f),[3] by threatening to present disciplinary charges solely to ob-

---

2. SCR 3.130–3.4(c) reads, "A lawyer shall not: (c) knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists."

3. SCR 3.130–3.4(f) reads, "A lawyer shall not: (f) present, participate in presenting, or threaten to present criminal or disciplinary charges solely to obtain an advantage in any civil or criminal matter."

tain an advantage in his client's case, including threatening disciplinary charges against the hearing officer in the Dixon matter and threatening to present disciplinary charges against Defendant Lawson in the federal matter;

(3) SCR 3.130–3.5(c),[4] by making allegations that were unsubstantiated or unrelated to the case and by multiplying the proceedings unreasonably and vexatiously, resulting in needless delay to the court and unnecessary expense to the defendants;

(4) SCR 3.130–3.1,[5] by asserting issues in the matter with no factual basis and by pursuing the case based on unsubstantiated, frivolous, and baseless allegations;

(5) SCR 3.130–8.2(a),[6] by alleging the administrative tribunal's hearing officer conspired against Dixon in an effort to frame his client and cause the tribunal to rule against his client, by accusing the hearing officer of incompetence, by asserting that the hearing officer was involved in a quasi-legal scheme to defraud Dixon, by asserting that the hearing officer "rigged" the hearing, by referring to the proceeding as a "sham," and by impugning the character of the hearing officer.

## C. Trial Commissioner's Report and Board of Governors' Finding of Guilt and Recommendation.

Blum filed a response to the Charge, and a hearing followed before a trial commissioner. Before the hearing, the trial commissioner granted the KBA's motion to apply collateral estoppel, preventing Blum from "relitigating the matters litigated in the Dixon action in the U.S. District Court and Sixth Circuit Court of Appeals." Blum argued before the trial commissioner and continues to argue to this Court that the use of collateral estoppel in this manner effectively prevented him from presenting a meaningful defense.

After hearing the evidence, the trial commissioner issued a 29–page report finding Blum guilty of violating the Kentucky Rules of Professional Conduct as charged in Counts I, II, III, and V, but not guilty of Count IV.

Blum appealed the decision to the Board of Governors, which unanimously adopted the trial commissioner's report. The Board of Governors also adopted the trial commissioner's recommended 181–day suspension from the practice of law.

## II. ANALYSIS.

Blum now appeals to this Court, alleging various due process violations, insufficient evidence to support the Charge, and a wholesale disapproval of the disciplinary process that brought him to this point. And consistent with the conduct that lead to this action, Blum has filed with this Court more than the customary number of motions, all purporting to instruct this Court and the KBA on the proper procedures.

---

**4.** SCR 3.130–3.5(c) reads, "A lawyer shall not: (c) engage in conduct intended to disrupt a tribunal."

**5.** SCR 3.130–3.1 reads, "A lawyer shall not knowingly bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law."

**6.** SCR 3.130–8.2(a) reads, "A lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge, adjudicatory officer or public legal officer, or of a candidate for election or appointment to judicial or legal office."

■ From the outset, we dispose of Blum's contention that the trial commissioner's use of collateral estoppel was error. This Court has repeatedly barred attorneys from usurping the disciplinary process by relitigating the merits of a case. In *Kentucky Bar Ass'n v. Harris*,[7] we noted that "[i]n disciplinary proceedings, a judgment of a court is considered conclusive proof that the alleged conduct occurred."[8] And we see no reason to depart from this sound approach.

Blum appealed the order of the U.S. District Court imposing sanctions against him for improper conduct. He was unsuccessful before the federal appellate court, which affirmed the misconduct sanction and buttressed its opinion by quoting Blum's brief as an example of aberrant professional behavior. Naturally, Blum wants to replow that ground. But the disciplinary process is not a forum in which to resurrect the arguments lost in the federal case. Because we review alleged violations de novo, the prohibition against retrying the facts of his conduct in federal court does not preclude Blum from presenting a meaningful defense to the issue of whether the conduct that earned him condemnation in the federal courts constitutes a violation of the Kentucky Rules of Professional Conduct.

Blum also argues that the trial commissioner's findings of guilt should be overturned because the Charge issued by the Inquiry Commission was vague and lacking in evidentiary support. As a result, he argues that he could not precisely defend against these vague allegations.

■ But the Inquiry Commission is not required to state the factual basis of alleged violations with the same specificity as factfinders like the trial commissioner or Board of Governors. Rather, a showing of probable cause is all that is required.[9] The findings by the trial commissioner and the Board of Governors are advisory only; and, as such, we conduct an independent review of the record and alleged violations.[10] So we reject Blum's contention that the First Amended Charge is defective.

## A. Blum did not Violate SCR 3.130–3.4(c).

■ The Inquiry Commission charged that Blum violated SCR 3.130–3.4(c) by disregarding various warnings and instructions issued by the U.S. District Court. The trial commissioner found that the evidence showed Blum was guilty and the Board of Governors agreed. As the trial court found, Blum's conduct was highly inappropriate; but because Blum did not

7. 269 S.W.3d 414 (Ky.2008).

8. *Id.* at 418 (citing *Kentucky Bar Ass'n v. Horn*, 4 S.W.3d 135, 137 (Ky.1999)). *See also Kentucky Bar Ass'n v. Greene*, 386 S.W.3d 717, 724 (Ky.2012) (engaging in general discussion of when res judicata and collateral estoppel are appropriate in bar disciplinary proceedings).

9. *See* SCR 3.190. This is not to be construed as an endorsement of the form of the Charge in this case. We do find it worthwhile to note that the Charge issued here contains fifty-nine numbered paragraphs of factual allegations under the heading of "Count I" and then merely a quote of the rule alleged to have been violated and a general description of the violation under each succeeding count. Although not improper, this Charge would have been clearer had it alleged with specificity the offending statement or action that Blum had made or done in violation of any rule. The Inquiry Commission must "convey enough factual information to support a finding of the violation of the count(s) it asserts." *Kentucky Bar Ass'n v. Edwards*, 377 S.W.3d 557, 562 (Ky.2012).

10. *Kentucky Bar Ass'n v. Berry*, 626 S.W.2d 632 (Ky.1981).

disobey an obligation under the rules of a tribunal, we find him not guilty.

At a court-ordered scheduling conference early-on in that case, the federal district judge admonished Blum that he was expected to follow the court's local rules to ensure that his future filings complied with format and length requirements. The court admonished Blum pointedly that speaking motions [11] were not permitted and directed Blum to stop filing motions purporting to instruct the court and opposing counsel on proper procedure. After the case was later dismissed, the court determined on its own motion to chastise Blum and sanction him, issuing an order that listed numerous examples of his recalcitrant behavior in the face of the trial court's warnings. The court stated:

> Although the Court does not believe the Defendants are entitled to be awarded attorney's fees under 42 U.S.C. § 1988, it does find that there has been improper conduct by the Plaintiffs counsel, Jeffrey Blum. This includes the pressing of specious legal claims and filings in this case which either contained inappropriate language, claims and assertions (requiring unnecessary responses) or which were inappropriate *en toto*. Indeed, despite being warned by the Court that his actions were improper, Mr. Blum continued to make personal attacks. Additionally, he continued to instruct opposing counsel and the Court as to the "proper procedures" that each should follow.
>
> . . . .
>
> Throughout the course of this litigation, Mr. Blum has engaged in "instruction" of opposing counsel and the Court of the

proper way to proceed, despite the Court's admonition that such conduct was improper and unnecessary.[12]

The trial court went on to describe more "extraneous filings," "extensive instructions to the Court," and the "needless delay" caused by Blum's filings. The court found it "particularly troubling" that Blum persisted in this conduct despite being "specifically warned in open court." And the court mentioned that Blum violated Local Rule 7.1.

On appeal, the Sixth Circuit affirmed the sanction and added more by quoting a sample of Blum's hyperbole from the brief he filed in that court:

> [The tribunal hearing officer's] attempt to claim quasi-judicial immunity is likewise devoid of supporting materials. All he has established so far is that he called the historical docudrama exercise "a hearing," generated a "final order" after it, and that it was conducted indoors. This is insufficient. If a judge or hearing officer calls a plaintiff into his chambers saying, "your trial is about to begin" and rapes her and states she has "prevailed," the fact that he calls it "a trial" will hardly allow him to invoke quasi-judicial immunity. The historical docudrama exercise in this case occupies a position about halfway between a bona fide tribunal hearing and a rape.[13]

The trial commissioner cited these incidents along with others and found Blum was guilty of disobeying the rules of the federal court.

Our disapproval of Blum's conduct in the underlying proceedings cannot be over-

---

11. According to GARNER'S DICTIONARY OF LEGAL USAGE (3rd ed. Oxford 2011), the term *speaking* has evolved in legal jargon as an adjective denoting some type of impermissible or extraordinary communication. A speaking motion is one that requires consideration of facts outside the pleadings.

12. *Dixon v. Clem*, 2006 WL 751235 (E.D.Ky. March 21, 2006).

13. *Dixon v. Clem*, 492 F.3d 665, 679 (6th Cir.2007).

stated. But that disapproval does not impel us to find Blum guilty of the alleged offense. We have primarily found violations of SCR 3.130–3.4(c) in circumstances where an attorney violates a court order, a rule of civil procedure, or a local rule; fails to appear for a client or respond despite numerous requests for a response; or continues practicing after being suspended from the practice of law.[14]

Here, we are faced with an attorney whose conduct contravenes instructions given by the judge pertaining to the control of the court's docket or the conduct of counsel in the judge's courtroom. A court has inherent authority to ensure that it functions efficiently and effectively to provide the fair administration of justice and to control its docket with economy of time and effort. And to vindicate that authority, the court may exercise almost unfettered discretion to sanction those who flout it. The instant circumstances, while demonstrating the authority of the court to control the conduct of lawyers who practice before it, do not fit nicely within the scope of professional discipline under our current rules.

The facts of Blum's case present us with little to no evidence that Blum actually violated any obligation under the rules of a tribunal.[15] We concede that Blum acted contrary to repeated warnings, admonitions, and directions of the trial court. And we recognize that disregarding a judge's admonition may be contumacious conduct that warrants sanction. But without further action by the District Court, e.g. an order, we do not find the judge's admonitions to be sufficient to fall under the scope of SCR 3.130–3.4(c). Blum's recalcitrance in the face of repeated warnings by the trial court merited sanction, and the trial court imposed the sanction it believed appropriate to address the gravity of the offense.

■ Our research does not reveal a single example of an attorney being held to violate SCR 3.130–3.4(c) in a situation similar to the present case. This is consistent with the plain language of the rule. In finding Blum not guilty of violating SCR 3.130–3.4(c), we align our jurisprudence

14. See, e.g., Moeves v. Kentucky Bar Ass'n, 380 S.W.3d 536, 541–42 (Ky.2012) (finding a violation when attorney failed to comply with order to provide escrow account records); Kentucky Bar Ass'n v. McDonner, 353 S.W.3d 612 (Ky.2011) (continuing to practice despite being suspended was a violation); Kentucky Bar Ass'n v. Leadingham, 318 S.W.3d 598 (Ky.2010) (failing to send KBA copies of letters informing clients that attorney was suspended under a Supreme Court Order was a violation); Trainor v. Kentucky Bar Ass'n, 311 S.W.3d 719 (Ky.2010) (finding failure to maintain adequate professional liability insurance was a violation). See also Greene, 386 S.W.3d at 732–34 (finding attorney not guilty because no evidence that knowingly or intentionally violated a court's Order).

15. The only mention of Blum violating any of our previously recognized obligations under "the rules of the tribunal" was a naked assertion by the District Court, repeated by the trial commissioner, that Blum violated Local Rule 7.1. No proof of how Blum's conduct violated Local Rule 7.1 was offered by the District Court or the KBA. The District Court does allude to how Blum violated the local rule; but after reading of the Eastern District of Kentucky's Local Rule 7.1, we find it difficult to comprehend how Blum's filing of declaration of counsel "purporting to provide evidence of Defendant's motive to engage in a conspiracy against his client" constitutes a violation. Some guidance from the District Court would have been useful because Local Rule 7.1 makes no mention of raising new arguments at all, let alone in the reply brief or subsequent briefs as the District Court alleged. As mentioned previously, a violation of a local rule would be sufficient for a finding of guilt under SCR 3.130–3.4(c), but a simple remark of a violation with little support cannot meet the preponderance-of-the-evidence standard required. See SCR 3.330.

with that of many other states, as well as the American Bar Association (ABA) Model Rules, after which our rules are cast.[16] "Obligation under the rules of a tribunal" means just that. It does not encompass violations of warnings, admonitions, or other statements made by a trial judge in an attempt to urge an attorney to conform his conduct to the recommended courtroom practice. The court speaks through its orders, and SCR 3.130–3.4(c) is intended to discipline attorneys who do not comply.

Attorneys should work earnestly to comply with the guidance from the bench; but, as this case illustrates, the relationship between attorney and judge is not always harmonious. The judge, entrusted with the inherent power and duty to manage his or her docket and courtroom, is capable of controlling most instances of misbehaving lawyers—including this one—without the further assistance of professional discipline.

Accordingly, we find that Blum is not guilty of violating SCR 3.130–3.4(c).

## B. Blum Violated SCR 3.1303.4(f).

"A lawyer shall not present, participate in presenting, or threaten to present criminal or disciplinary charges solely to obtain an advantage in any civil or criminal matter." [17] Blum argues that the evidence presented is insufficient to support the finding. Additionally, Blum argues that he did not violate the rule because the mentions of disciplinary proceedings were done on a good faith basis, therefore, not "solely" for an advantage in a civil matter. We agree with the trial commissioner and Board of Governors and find Blum guilty on this count.

### 1. Blum Threatened School Board Attorney Lawson to Gain Advantage in Discovery.

■ The trial commissioner found that while discovery in the U.S. District Court was abated pending a scheduling conference, Blum sent a letter to counsel for Susan Lawson, the attorney for the Harlan County School Board whom Blum had named a defendant in the federal case. Blum was seeking a copy of the invoice from Fleetwood Photo in order to aid in interviewing a Fleetwood employee about the photographs at the center of the controversy. In the letter, Blum stated:

16. Tellingly, the relevant annotation to the ABA Model Rules, Ann. Mod. Rules Prof. Cond. § 3.4 (7th ed.2011), states that Rule 3.4(c) prohibits lawyers from "disobeying, or advising their clients to disobey, court orders"; and the rule also prohibits "lawyers from disobeying the rules of a tribunal." The language used in ABA Model Rule 3.4(c) is the exact language used in SCR 3.130–3.4(c). *See, e.g., In re Wiles*, 289 Kan. 201, 210 P.3d 613 (2009) (attorney found to be in violation for practicing law after order of suspension); *In re Disciplinary Action Against Fuller*, 621 N.W.2d 460 (Minn.2001) (finding attorney in violation for not disclosing to court or obtaining its approval for fees as required by bankruptcy rules); *Attorney Grievance Comm'n v. Byrd*, 408 Md. 449, 970 A.2d 870 (2009) (finding attorney violated rule by disobeying bankruptcy judge's order to vacate home); *Disci-*

*plinary Bd. of Supreme Court v. Robb*, 618 N.W.2d 721 (N.D.2000) (finding violation when lawyer did not follow court rule for properly withdrawing from representation); *In re Mozingo*, 330 S.C. 67, 497 S.E.2d 729 (1998) (finding violation when lawyer did not relinquish file after he was suspended as required by rules of the tribunal); *Lawyer Disciplinary Bd. v. Martin*, 225 W.Va. 387, 693 S.E.2d 461 (2010). Furthermore, ABA Ethics Opinions make it clear that Rule 3.4(c) is to be applied when an attorney violates rules or orders of a tribunal. *See* ABA Formal Ethics Op. 94–386 (revision 1995) (Rule 3.4(c) does not forbid lawyers from citing other jurisdictions' unpublished opinions in jurisdiction that does not have such ban).

17. SCR 3.130–3.4(f).

It is a request for voluntary cooperation in connection with an inquiry that will probably be initiated by the Office of Bar Counsel. I continue to be concerned about the possibility of a continuing violation of the Code of Professional Responsibility by Ms. Lawson, but I also want to be fair to her. . . . But I ask you to consider that your client may be better off overall if she now comes clean with a truthful account of what occurred at Fleetwood and makes available for inspection all materials that she now has from Fleetwood.

But the District Court's Order informed the parties that "they should not engage in discovery until a Scheduling Order ha[d] been entered by the Court." Blum argues that he did not threaten Lawson because he made the claim in good faith after discussing the matter with former Chief Bar Counsel; that Lawson held the only copy of the invoice Blum was looking for, making its production vitally important to his client's case; and Blum was simply soliciting Lawson's voluntary compliance with SCR 3.130–3.4(a), which requires a lawyer to refrain from "unlawfully obstruct[ing] another party's access to evidence or unlawfully . . . conceal[ing] a document or other material having potential evidentiary value."

We are not persuaded by Blum's arguments about this letter to Lawson. Lawson was lawfully obstructing Blum's access by complying with the court order that no discovery should be taken. Blum was fully aware of this, as well, which is further evidence that he only did it to gain an advantage.

We find the cases Blum cites to support his argument of good faith are neither binding nor persuasive. In fact, our reading of *Barrett v. Virginia State Bar*,[18] a case relied upon by Blum, dispels the notion that a good-faith basis for suggesting a disciplinary claim against opposing counsel is dispositive that the suggestion is not a threat. In *Barrett*, Barrett asserted as a defense that he did not make threats to the opposing counsel solely to gain an advantage but, rather, because he honestly thought opposing counsel's behavior was unethical.[19] Regardless of Barrett's professed good faith belief, the Virginia Supreme Court concluded that Barrett had violated the rule. We mention this aspect of the *Barrett* decision because Blum falls prey to the same mistaken logic as Barrett. In our view, it is "only marginally consequential whether the target lawyer has in fact behaved unethically."[20] Rather, the "focal point here is the purpose of the threat and not the conduct of the lawyer being threatened."[21] If Blum had knowledge that Lawson was behaving unethically, he had a duty to report the misconduct rather than threaten her that he might report it.[22]

The circumstances presented in the instant case indicate that Blum improperly threatened Lawson with disciplinary proceedings in order to gain an advantage in the civil matter. This violation is made apparent by the fact that Blum prodded Lawson to produce evidence in the face of the federal court's discovery abatement or-

18. 269 Va. 583, 611 S.E.2d 375 (2005).

19. *Id.* at 381.

20. Douglas R. Richmond, *Saber–Rattling and the Sound of Professional Responsibility*, 34 Am. J. Trial Advoc. 27, 61 (Summer 2010). *See also* SCR 3.130 § XXI.

21. *Id.*

22. Assuming Lawson's unethical conduct was substantial, Blum would have a duty to report it. *See* SCR 3.130–8.3(a).

der. Blum knew that discovery was not permitted at the time and attempted to skirt the court order by simply stating, "this is not a discovery request" in the letter. The veil created by Blum's wording was thin indeed.[23] Blum used the threat of disciplinary proceedings to gain an advantage—namely, an end-run around the court's restrictions placed on the discovery timeline.

### 2. Blum Threatened Hearing Officer Michael Head.

■ Hearing Officer Michael Head presided over the second tribunal hearing regarding Dixon's conduct unbecoming a teacher charge. In attempting to apply the Harlan Circuit Court's Order for a new penalty hearing on remand, Head determined that the members of the second tribunal would hear and see the evidence presented to the first tribunal and then would determine the appropriate penalty for Dixon. Blum did not approve of this procedure, demanding a de novo hearing in an attempt to relitigate the charges against Dixon in light of new evidence. Blum repeatedly made his displeasure known and demanded that Head order a completely new hearing.

The theme appearing throughout the documents filed by Blum was that Head was forcing all participants in the second hearing to violate ethical rules and act out a "historical docudrama." In a motion attempting to get Head to alter his order establishing the procedure for the second tribunal hearing and placing exhibits under seal, Blum wrote:

> Under these circumstances all counsel involved in this hearing as well as the Hearing Officer will be forced to litigate in a manner that will be close to the edge of committing serious ethical improprieties leading to professional discipline. The greatest kindness that all counsel and the Hearing Officer can show toward one another will be to adopt a procedure of identifying clearly in writing at the outset any conduct that will likely cause the filing of disciplinary complaints or imposition of sanctions. This will allow all counsel and the Hearing Officer at least to be able to make an informed decision about whether he wishes to persist in the alleged misconduct and face a likely disciplinary proceeding or sanction. This method of proceeding is presently a legal requirement for any sanctions that the Hearing Officer might wish to impose on counsel. It should by stipulation or order also be made a requirement for attorneys planning to file disciplinary complaints against the Hearing Officer or against one another. The current Hearing Officer inadvertently gives the impression that he may be attempting to frame Petitioner and his current counsel on a bogus offense of breaching a protective order-an offense which, with certain additional stretches of pseudo-legalism, might provide [Harlan County School Board] with an alternate route to winning the case. Although the undersigned has a sufficiently high regard for

---

**23.** Blum appears to know that his actions are improper and threatens Lawson's counsel in the letter: "Conversely, I provide you with this reassurance, that I perceive no ethical infraction by any member of your firm as long as you do not seek to misuse the power of any court by blackmailing me with legally groundless sanctions. So you are free to spurn my request without fear of a bar complaint against either of you." Blum attempts to hide his threat against Lawson and counsel with facially amicable language, but the meaning is clear—you are free to spurn my request as long as you don't file sanctions against me; but, if you do file a motion for sanctions against me, I may perceive an ethics violation and pursue a bar complaint. This is not allowable.

the current Hearing Officer that he does not believe this would really be contemplated, it is nevertheless appropriate to issue the following caution: at the first whiff of something like this occurring, the undersigned will press charges against the Hearing Officer aimed at securing a lifetime ban on the holding of any judicial position in the United States. This possibility should be closed off with an appropriate modification of the May 10 Order which, for unknown reasons, again places the exhibits under seal.

Blum argues that he was merely putting all participants in the proceeding on notice of the potential consequences for their conduct. Again, the veil Blum attempts to pull over his conduct is thin. We fail to see Blum's conduct as altruistic as he attempts to present it. If Blum wanted to have Head's order modified, there were legal avenues available to him. The improper issuance of an order is a legal argument to be debated in the courtroom, on appeal, or through a writ action. Instead, Blum demanded Head modify an order with threats of professional misconduct charges. This is an improper use of the disciplinary process.

Furthermore, if Blum were sincerely concerned about any unethical conduct caused by the nature of the proceedings, he should have followed through and filed a complaint. The proceedings have advanced in the manner Blum has continually railed against and cautioned would cause ethical violations. But, to the Court's knowledge, Blum has not pursued any ethical claims against any participants. The absence of any subsequent action by Blum is indicative that he bluffed filing complaints in an attempt to gain an advantage in his representation of Dixon or simply to harass or intimidate. It appears more likely that Blum, acting under the guise of concern for his fellow attorneys, maintained the possibility of disciplinary sanctions or proceedings at the forefront of his court filings and communications in an attempt to get what he wanted—the relitigation of the charges against Dixon, expressly prohibited by the Harlan Circuit Court. We agree with the trial commissioner that Blum veiling threats in this manner was "a grandiose gesture of no significance."

■ Throughout his representation of Dixon, Blum engaged in saber-rattling as a technique of advocacy.[24] The Rules of Professional Conduct do not allow such behavior. The purpose of the Rules is subverted when they are invoked as procedural weapons.[25] The making of a threat to report a violation of the disciplinary rules is "unprofessional and unethical."[26] We will not disturb the trial commissioner's finding of guilt. So we hold that Blum did violate SCR 3.130–3.4(f).

## C. Blum Violated SCR 3.1303.5(c).

■ "A lawyer shall not . . . engage in

24. We note that Blum additionally argues that the nature of the proceedings required that he toe the line between ethical and unethical behavior in order adequately to represent Dixon. We would remind Blum "the advocacy to which a client and the client's legal position is entitled cannot enable or justify an attorney in violating ethical restraints." *In re Comfort*, 284 Kan. 183, 159 P.3d 1011, 1021 (2007). An attorney is obligated to advocate zealously for a client's legitimate interest, but that advocacy must be through ethically permissible means. *See id.* ("There are times

when an attorney's only ethical duty is to tell a client . . . 'your legal objective is valid, but I am ethically bound to pursue it through a different means.' ").

25. SCR 3.130 § XXI.

26. Kentucky Bar Association Ethics Opinion, KBA E–265 (November 1982). Per this ethics opinion, threatening to report a disciplinary violation is seen as a form of verbal abuse.

conduct intended to disrupt a tribunal."[27] Blum argues that the trial commissioner misunderstood the meaning of *disrupt*, as used in the rule, and confuses it with the meanings of *delay* and *ensure proper conduct by*. Further, Blum argues that the evidence presented is wholly insufficient, presenting no mention of conduct that would normally be associated with *disrupt*, *i.e.* shouting, waving a firearm, or pushing or striking an individual. We disagree and find Blum guilty.

The evidence presented against Blum is voluminous and reveals Blum's clear pattern of burdening the judicial process with repetitive and extraneous motions, all filled with unnecessary and inappropriate comments. The trial commissioner found:

> Unhappy with the procedural order of the Hearing Officer, [Blum] filed his motion to disrupt the proceedings, and offered to sue any substituted attorney unless Hearing Officer Head modified the procedural order. The advocate has a duty to put forth the cause of his client, to make a record of the process and preserve error that might inure to the cause of his client on appeal. A Petition for Writ of Prohibition or Mandamus is a legitimate, though extraordinary, tool to seek a remedy. It is one that an advocate files—not threatens to file.
>
> . . . .
>
> [Blum] first objected to the proposed tribunal procedure in his response. He then filed a Motion to Reconsider. He then filed a Motion renewing his objections. He then filed a Motion for a new hearing or to remand. He then filed a Motion to Modify the Hearing Officer's May 10 Order and seeking other relief. He then faxed a letter to the Hearing Officer suggesting a location for the hearing, raising concerns regarding *voir dire* of tribunal members, demanding a written order be faxed by May 20, moving to strike opposing counsel's objections, concerns regarding the presentation of evidence and opposing a *res judicata* argument raised by opposing counsel. [Blum] advised the Hearing Officer that a citizen's group would likely be placing evidence of fraud on the internet, potentially resulting in professional discipline. He suggested that if the Hearing Officer did not understand the concept of *res judicata*, perhaps he could consult with someone knowledgeable. Then [Blum] filed his Motion to Withdraw. These listed pleadings and correspondence were repetitive and vexations [sic] and burdened the resources of opposing counsel and the Hearing Officer and delayed the adjudicatory process. His motion and letter practice were disruptive.
>
> . . . .
>
> The multiple repetitive filings caused the hearing to be delayed at least twice and served to disrupt the proceedings. Without question an advocate must press the legitimate claims of his client, both procedurally and substantively, but once a judicial officer has ruled the advocate must move on to adjudication in conformity with the ruling in anticipation of appellate relief.
>
> . . . .
>
> [Blum] engaged in conduct intended to disrupt the tribunal when he filed repetitive pleadings, delayed the adjudicatory process, and sought extra-judicial resolution in order to receive a *de novo* tribunal hearing contrary to the Order of the Harlan Circuit Court.

27. SCR 3.130–3.5(c).

Blum's disruptive method of practice continued before the U.S. District Court. Notably, the U.S. District Court sanctioned Blum under 20 U.S.C. § 1927, which "is designed as a sanction against dilatory litigation practices and is intended to require an attorney to satisfy personally the excess costs attributable to his misconduct."[28] After describing a large number of extraneous filings by Blum, the U.S. District Court observed:

> The total effect of all of these extraneous filings is to cause needless delay to the Court and unnecessary expense to the Defendants. Clearly, opposing counsel has been required to take extra time to determine the nature of the claims, assertions, allegations and "instructions," parse out the numerous extraneous allegations and responses contained in each, and attempt to respond to these filings within the confines of the Local Rules. That Mr. Blum continued these filings even after being specifically warned in open court is particularly troubling.[29]

*Disrupt* does not require the level of conduct as argued by Blum. Admittedly, shouting in open court, blocking an exit, or waving a firearm, would certainly be grounds for a finding of, at the very least, disruptive behavior. But *disrupt* is defined as "to throw into disorder" or more importantly for these circumstances, "to interrupt the normal course of unity of."[30] Here, Blum's conduct assuredly interrupted the normal course of unity of the judicial proceedings. And, regrettably, Blum has strengthened the validity of the case against him by continuing to file various repetitive motions before this Court, demonstrating the disruptive nature of such a motion practice.

In finding Blum's conduct disruptive, we find it analogous to our decision in *Kentucky Bar Ass'n v. Nall.*[31] In *Nall,* an attorney was reprimanded for his "rude and sarcastic" behavior, describing the hearing as a "mere farce" and a "kangaroo court" and, most importantly, sending a letter to the Governor of Kentucky "in which he complained of the manner in which the hearing officer had conducted the hearing and accused him of 'atrocious, biased and prejudicial acts.' "[32] *Nall* arose before the adoption of the current professional discipline regime and, as such, involved the violation of a different rule than Blum is currently accused of violating. But Blum's conduct is very similar and warrants discipline. His unnecessary motions, threatening of and seeking extrajudicial resolution, charges of conspiracy, and warning Deputy Attorney General Whites of a potential scandal accomplished little except for delaying and interrupting the proceedings. Moreover, Blum continued the unnecessary and repetitive filings in the face of continuous rebukes from the respective tribunals. As an officer of the court, Blum has an obligation to advocate for his client; but that obligation does not provide Blum with permission to inundate the court with the same argument couched under different motions. Justice is not a war of attrition. The trial commissioner found Blum guilty of violating SCR 3.130–3.5(c). We will not disturb that finding. So we hold that Blum violated SCR 3.130–3.5(c).

---

28. *Dixon,* 2006 WL 751235 (E.D.Ky. March 21, 2006) (citing *In re Ruben,* 825 F.2d 977, 983 (6th Cir.1987)).

29. *Id.*

30. Merriam-Webster Dictionary (2013).

31. 599 S.W.2d 899 (Ky.1980).

32. *Id.*

## D. Blum Violated SCR 3.130–8.2(a).

 "A lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge, adjudicatory officer or public legal officer...." [33] Blum contests this violation by arguing that the statements identified by the KBA are not factual assertions concerning a judicial officer's qualifications or integrity. Additionally, Blum argues that a good portion of the statements were factual assertions necessary to prove required elements in a federal complaint. And Blum further argues that the trial commissioner's ruling creates per se violations of Rule 8.2(a), making legal argument nearly impossible. In a case similar to the case at hand, our predecessor court stated:

> Freedom of speech is not a license. It is a right or a privilege constitutionally guaranteed, but he who uses it as a license to degrade another does so at his peril. He must be prepared to prove the truth of his charges. Of course any attorney, as well as any other citizen has the right to criticize the Courts and their decisions, but the publication of false and scurrilous matters subjects them to disciplinary action.[34]

We disagree with Blum's arguments and find Blum guilty.

We find it necessary here to respond to Blum's argument that the KBA has violated his First Amendment rights with the nature of the proceeding below and the charges against him. Blum's position is disingenuous and is only supportable through his use of creative citation. It has routinely been upheld that regulating the speech of attorneys is appropriate in order to maintain the public confidence and credibility of the judiciary and as a condition of "[t]he license granted by the court." [35] This does not mean that an attorney surrenders his First Amendment rights in exchange for a license; but "once a lawyer is admitted to the bar[,] ... he must temper his criticisms in accordance with professional standards of conduct." [36] Accordingly, not all criticism of judicial officers is prohibited, only that which is knowingly false or made with a reckless disregard as to its truth or falsity.

Here, Blum directs this Court's attention to the recently decided Sixth Circuit case of *Berry v. Schmitt*[37] to support the proposition that the KBA is chilling his freedom of speech. In *Berry*, the Sixth Circuit held that the KBA's disciplining of an attorney for his post-proceeding speech, as a private citizen, was improper because it was a statement of opinion based on articulable facts.[38] Blum's statements have no articulable facts. And the case, as acknowledged by the Sixth Circuit in its opinion, is clearly not applicable to Blum's facts. The court's holding does not apply to an attorney speaking during judicial

33. SCR 3.130–8.2(a).

34. *Kentucky State Bar Ass'n v. Lewis*, 282 S.W.2d 321, 326 (Ky.1955) (citations omitted).

35. *See, e.g., In re Snyder*, 472 U.S. 634, 105 S.Ct. 2874, 86 L.Ed.2d 504 (1985) (noting that an attorney's license requires him or her to "conduct themselves in a manner compatible with the role of courts in the administration of justice."). *See also* Ann. Mod. Rules Prof. Cond. § 8.2 (2011); *Kentucky Bar Ass'n v. Waller*, 929 S.W.2d 181 (Ky.1996) (holding need to promote respect for integrity of judiciary outweighed First Amendment rights of attorney).

36. *In re Sandlin*, 12 F.3d 861, 866 (9th Cir. 1993).

37. 688 F.3d 290 (6th Cir.2012).

38. *Id.* at 302–05.

proceedings.[39] When an attorney speaks during a judicial proceeding, as Blum did here through various motions and filings, he "cannot seek refuge within [his] own First Amendment right of free speech to fill a courtroom with a litany of speculative accusations and insults which raise doubts as to a judge's impartiality."[40] Blum fails to acknowledge this distinction in his argument to this Court, opting instead to take license with the language of *Berry* to suit his argument.

The trial commissioner cites to a number of objectionable statements made by Blum in various pleadings to both the Hearing Officer and the U.S. District Court. A good number of these statements have been mentioned in discussion above and do not merit a finding of a violation under SCR 3.130–8.2(a). But the statements in Blum's federal complaint on behalf of Dixon alleging Hearing Officer Head was involved in a conspiracy to "cover up ... malfeasance," rigged the second hearing by "refusing to allow any live testimony or tangible evidence," converted the second hearing into a "sham hearing" with the help of others, and "defrauded the second tribunal" are worthy of discipline. Additionally, Blum's accusation that Hearing Officer Head was biased[41] is worthy of discipline. In sum, we find statements throughout Blum's representation of Dixon that are completely inappropriate and unsubstantiated.

Blum argues that the statements in the federal complaint were necessary in order to plead effectively a violation of substantive due process or, alternatively, that the statements have not been proven to be false.[42] We recognize and understand Blum's position but disagree. Blum made these statements in the heat of the moment with no basis on the record, outside the fact that Hearing Officer Head did not rule in his favor. Accordingly, Blum acted with reckless disregard for the truth.

After analyzing numerous authorities, because the interests served by professional discipline are different from those served by defamation law, we opt to use an objective standard in determining whether a lawyer makes statements knowing they are false or with reckless disregard to their falsity. The appropriate test is what a reasonable attorney, considered in light of all the attorney's professional functions, would do in the same or similar circumstances.[43] With this standard in mind, we are unconvinced that any reasonable attorney would accept Blum's charges of corruption and bias as true. And we are unconvinced that any reasonable attorney would have made these allegations without inquiry into their accuracy. Blum was reckless in asserting these allegations, and his argument of necessity for his federal complaint falls short. Legal argument is possible without the use of bully tactics. We find Blum guilty of violating SCR 3.130–8.2(a).

### III. BLUM'S SANCTION.

Throughout the course of the proceedings that formed the basis for the Charge,

---

**39.** "We take no position on whether our analysis would be different if it involved an attorney speaking during judicial proceedings." *Id.* at 304.

**40.** *Id.* at 304–05.

**41.** "Mere bias does not justify overthrowing all rules of appellate procedure." *Petitioner's Motion to Recognize Judge Maricle's August 15, 2004, Remand Order as a Mandate to Con-* duct a New Hearing or, Alternatively, to Remand the Case to Judge Maricle for Clarification of his Order.

**42.** In asserting truth as a defense, Blum, misses the point. *See Waller,* 929 S.W.2d at 184.

**43.** *In re Sandlin,* 12 F.3d at 867.

Blum has used hostile, argumentative, and threatening advocacy and fouled court records with distracting overstatements. Blum's unprofessional conduct degrades the legal profession, burdens the work of the courts, unnecessarily inflates, the cost of defense, and ultimately disserves Blum's clients' interests.

We are further troubled because Blum has not wavered in his use of advocacy techniques that, at worst, offend the administration of justice and, at best, delay its delivery. Tellingly, the trial commissioner noted that Blum insisted on having his own videographer at the evidentiary hearing below and attempted to deceive Bar Counsel regarding the videographer's identity.[44] Unfortunately, it does not seem that Blum has learned his lesson despite being reprimanded and/or sanctioned on at least three separate occasions by three separate tribunals.[45] And Blum has been the subject of two prior KBA disciplinary matters, receiving a private admonition in each case.[46] As a result, we feel it necessary to "impose a punishment of sufficient severity to forcefully inform [Blum] that he is wrong"; and "if [he] desires to continue practicing law in the Commonwealth of Kentucky, he must conform his professional conduct to minimum acceptable standards."[47]

The Board of Governors recommends that Blum be suspended for a period of 181 days. In recommending such punishment, the KBA points us to the case of *Kentucky Bar Ass'n v. Waller* as support for this level of punishment. While the language used by Blum throughout these proceedings does not rise to the level of invective used by Waller, a similar punishment is in order. What Blum lacks in inappropriate language, he more than makes up for in his refusal to yield or conform to the rules of professional conduct. Blum has been unrelenting in his personal attacks and improper accusations. His perseverance in advocating for his clients may be admirable, but his conduct is unacceptable.

The KBA also points out that Blum's conduct satisfies various aggravating factors listed in Rule 9.22 of the *American*

---

**44.** "The [trial commissioner] asked [Blum] the identity and qualifications of his proposed videographer. He was unable or unwilling to supply such information. At the disciplinary hearing [Blum] appeared with his videographer. When asked, he did not disclose the name of his videographer. He responded, 'Let's just call him D.H.' [Bar Counsel] asked [Blum] if the videographer was David Dixon, and he acknowledged that his videographer was David Dixon. When asked by the [trial commissioner] why he did not identify his videographer when asked on January 12, 2012, [Blum] said, 'Because I didn't think you'd let me.' "

**45.** *See Dixon*, 492 F.3d at 678 (citing *New York v. Green*, No. 01–CV–196A, 2004 WL 1375555 at *6 (W.D.N.Y. June 18, 2004) ("Blum's complete and unexplained disregard of his obligation to answer the complaint and his insincere overtures toward settlement support the conclusion that his decision to default was strategic, deliberate and willful.");

*Shepherd v. Wellman*, 313 F.3d 963, 969 (6th Cir.2002) (affirming the district court's imposition of § 1927 sanctions against Blum because "Blum's conduct during discovery unnecessarily multiplied the proceedings, and fell short of his obligations as a member of the bar."); *Blum v. Schlegel*, No. 96–7705, 1997 WL 138741 at *1–2 (2d Cir. Mar. 21, 1979) (affirming the district court's dismissal of Blum's own lawsuit as a sanction for his having willfully violated "the clear and unambiguous provisions" of the court's protective order.)).

**46.** Blum was found to have violated SCR 3.130–1.8(h) for entering into an agreement with a client prospectively limiting his liability for malpractice without advising client that independent representation is appropriate and SCR 3.130–1.3 for failure to act with reasonable diligence and promptness in representing a client.

**47.** *Waller*, 929 S.W.2d at 184.

*Bar Association's Standards for Imposing Lawyer Sanctions.* These factors serve to "justify an increase in the degree of discipline imposed."[48] In Blum's case, there are several aggravating factors present, including (1) multiple offenses representing a pattern of misconduct; (2) a refusal to acknowledge the wrongful nature of his conduct; (3) substantial experience in the practice of law; and (4) previous misconduct. In light of Blum's prior conduct and his persistent use of inappropriate litigation practices, we find a 181–day suspension to be appropriate.

Important in this consideration is SCR 3.510(1), which mandates that any member of the bar suspended for more than 180 days shall undergo a review by the Character and Fitness Committee and only resume practice upon this Court's order. It is our opinion that Blum warrants a review and evaluation by the Character and Fitness Committee before being reinstated to practice. Blum's disregard for the institution of justice is unacceptable, but more unacceptable is the disservice that he has brought on his clients. The protection of the public and the integrity of our judicial system compel this Court to believe 181 days is the proper length of suspension. We also require Blum to attend and complete an Ethics and Professionalism Enhancement Program within a year of this order, for which he will not receive, and shall not seek, any CLE credit. And this Court requires Blum to schedule an evaluation by the Kentucky Lawyer's Assistance Program within three months of the issuance of this order and thereafter commence treatment or counseling as recommended by the evaluation.

## IV. ORDER.

For the foregoing reasons, the Court ORDERS:

1) Jeffrey Michael Blum, KBA Member No. 86811, is guilty of violating SCR 3.130–3.4(f), SCR 3.130–3.5(c), and SCR 3.130–8.2(a), as alleged in KBA File No. 13738;

2) Blum is not guilty of violating SCR 3.130–3.1 and SCR 3.130–3.4(c), as alleged in KBA File No. 13738;

3) Blum is suspended from the practice of law in the Commonwealth of Kentucky for a period of not less than 181 days, with the period of suspension beginning ten days from the date of the rendition of this order. If Blum seeks reinstatement of his license, his application must be reviewed by the Character and Fitness Committee;

4) Blum must attend, at his own expense, an Ethics and Professionalism Enhancement Program offered by the Office of Bar Counsel (OBC) within twelve months of rendition of this Order. Blum will not be allowed to apply for CLE credit of any kind for this program and must furnish a release and waiver to the OBC to allow the OBC to verify he has not reported any such hours to the CLE Commission;

5) Blum must seek an evaluation by the Kentucky Lawyer's Assistance Program within three months of the rendition of this order and follow any and all treatment or counseling recommendations;

6) Under SCR 3.390, Blum must notify, in writing, all courts in which he has matters pending of his suspension from the practice of law, and notify all clients, in writing, of his inability to represent them and of the necessity and urgency of promptly retaining new counsel. Such notification shall be by letter duly placed in the United States mail within ten days of the date of the rendition of this order.

**48.** *Kentucky Bar Ass'n v. Bierbauer,* 282 S.W.3d 318, 323 (Ky.2009).

Blum must simultaneously provide a copy of all such letters to the Office of Bar Counsel. Furthermore, to the extent possible and necessary, Blum must immediately cancel and cease any advertising activities in which he is engaged;

7) Under SCR 3.450, Blum is ordered to pay all costs associated with this disciplinary proceeding, in the amount of $5,057.73, for which execution may issue from this Court upon finality of this order; and

8) All pending motions are DENIED.

ABRAMSON, CUNNINGHAM, NOBLE, SCOTT, and VENTERS, JJ., sitting. All concur. KELLER, J., not sitting.

ENTERED: April 25, 2013.

/s/ John D. Minton, Jr.
Chief Justice