TO BE PUBLISHED

# Supreme Court of Kentucky

2025-SC-0184-KB

IN RE:  BRANDY KATHLEEN LAWRENCE BARRETT

IN SUPREME COURT

## **OPINION AND ORDER**

Pursuant to SCR 3.480(2),[1] Brandy Kathleen Lawrence Barrett and the Office of Bar Counsel (OBC) have agreed to a negotiated sanction of suspension from the practice of law for thirty (30) days, probated for one (1) year with conditions.  This Court approves of and hereby imposes the parties' negotiated sanction.  Barrett was admitted to the practice of law in the Commonwealth of Kentucky on October 18, 2013.  Her membership number is 95762, and her bar roster address is 2300 Litton Lane, Suite 200 Hebron, KY 41048.

---

[1] SCR 3.480(2) provides in relevant part:

The Court may consider negotiated sanctions of disciplinary investigations, complaints or charges prior to the commencement of a hearing before a Trial Commissioner under SCR 3.240.  Any member who is under investigation pursuant to SCR 3.160(2) or who has a complaint or charge pending in this jurisdiction, and who desires to terminate such investigation or disciplinary proceedings at any stage of it may request Bar Counsel to consider a negotiated sanction.  If the member and Bar Counsel agree upon the specifics of the facts, the rules violated, and the appropriate sanction, the member shall file a motion with the Court which states such agreement. . . The Court may approve the sanction agreed to by the parties, or may remand the case for hearing or other proceedings specified in the order of remand.

The basis for these proceedings, OBC File No. 21-DIS-0049, is related to Barrett's representation of Benjamin Dusing in a child custody matter in Kenton Circuit Court, Family Court Division, against the child's mother Jill Bakker.[2]  Barrett's co-counsel in the matter were Jeffery Otis and Dusing himself, who appeared *pro se.*

When Barrett entered her appearance on January 27, 2021, a trial date had been previously set for February 21, 2021.  Prior to Barrett's involvement in the case the trial date had been continued twice.  The first trial date, set for May 2020, was continued because Dusing had failed to meet with the custodial evaluator in a timely manner.  The second trial date, set for November 2020, was continued after Dusing filed the second of several motions to recuse or disqualify the presiding judge, Christopher Mehling, which was denied.  Judge Mehling had previously denied a similar motion in August 2020, and subsequently denied a third motion to disqualify in December 2020.

On January 19, 2021, prior to Barrett's appearance, Dusing filed a "Motion for Indefinite Continuance of the February Trial Dates."  Dusing alleged a scheduling conflict and that he had been suffering from COVID-19. Judge Mehling denied that motion on February 2, 2021.  On February 19, 2021, two days before the trial was set to begin, Barrett filed a motion to disqualify Bakker's attorney, Stephanie Dietz.  Dusing and Otis also signed the motion.  In addition to representing Bakker against Dusing, Dietz also

---

[2] *Bakker v. Dusing,* No. 19-CI-0560.

represented Barrett's estranged husband in an unrelated personal domestic relations case. Barrett's motion to disqualify Dietz stated: "To the extent Dietz has a defense to the charge that her actions did not constitute a crime, the very best that can be said about such a defense is that such as a defense is an uphill battle for her[,]" and "[i]t is observed that Dietz may well have to undertake that uphill fight, given that the incident has been reported to law enforcement."

The trial proceeded as scheduled, and Judge Mehling later denied the motion to disqualify Dietz in his findings of fact, conclusions of law, and order dated April 5, 2021. In the same order Judge Mehling awarded sole custody of Dusing's and Bakker's child to Bakker. Ten days later Dusing filed a forty-five-page *pro se* motion to alter, amend, or vacate the April 5 order.

On May 3, 2021, Barrett filed a "(Fifth) Motion for Disqualification of Presiding Judge and Transfer of Companion Cases to Special Judge on Grounds of Serious Misconduct Involving Court Staff Member Alice Keys." Alice Keys was Judge Mehling's staff attorney. Barrett was the only person to sign this motion, and it alleged that:

1.) "It's long been suspected that both litigants have been corrupted in the form of preferential treatment extended opposing counsel by Ms. Keys, in 'burying' Mr. Dusing's motions while ensuring that all of opposing counsel's get heard, and drafting finding (sic) of facts that are transparently one-sided, and often objectively incorrect, and intended to advance opposing counsel's litigation goals. The evidence that there is some kind of relationship between Ms. Stephanie Dietz and Ms. Alice Keys, that has been leveraged to corrupt these litigants, has continued to mount as both litigants have worn on. . . it seems apparent that the presiding Judge has no clue what has been going on. In fact, the whole point is that it's been kept from him, and extensive efforts have been made to avoid deeply, unsettling information regarding the procedural

3

irregularities and misconduct that has taken place in these proceedings from coming to his attention."

2.) "The corruption of these proceedings is no longer merely on overwhelming circumstantial inference. It was made plain by the timing and substance of the Court's April 5, 2021 Order in the *Bakker* matter. The opinion was obviously written in advance and, by definition, could not have been based on the facts, law, evidence, or the parties' arguments to the Court."

3.) "The case outcome was – as a matter of logic – decided in advance, as suspected all along."

4.) "Ms. Dietz and Ms. Keys were already once caught 'red handed' manipulating the presiding Judge's judicial order in proceedings in July 2020. The motions bringing those circumstances to the Court's attention were 'buried' – as have so many other motions of Mr. Dusing in both proceedings – by Ms. Keys to protect herself and Ms. Dietz. This is corruption, and it is dead wrong."

5.) "The Motion to Disqualify Ms. Dietz, based on felonious conduct in a separate litigation, is being heard by a Special Judge on June 1, 2021. The Judge presiding over the case, who witnessed the felonious behavior, recused herself. The very same, identical motion was filed in the *Bakker* matter prior to trial and was swept under the rug."

6.) "Rank corruption has occurred, and that is now plain here. The presiding Judge needs to disqualify himself, the April 5, 2021 Order (that defies physics in its timing) must be vacated, and a Special Judge appointed to sort out this mess. What has occurred is extremely serious business and was long ago reported to the FBI."

On May 11, 2021, Barrett filed an "Emergency (Sixth) Motion for Disqualification of Presiding Judge Based on Objective Proof of Misconduct by Court Staff Member Alice Keys, Emergency Stay of *Bakker v. Dusing* and *Dusing v. Tapke* Matters, Vacation of Court's Recent Order Dated May 6, 2021, Vacation of Pending Hearing Dates in Both Matters and Immediate Transfer of Both Matters to a Special Judge." Barrett and Dusing signed this motion. The motion contained the following statements:

4

1.) "The evidence that staff member Alice Keys has engaged in misconduct in directing the outcome of both litigations in favor of persons, parties, and third-party actors adverse to Mr. Dusing is now beyond overwhelming. . . the outcome of the recent trial was decided in advance."

2.) "It's even more shocking that the Court would not disqualify instantly upon understanding that matters of constitutional import were clearly decided in advance and not on the facts and law. The timing alone of the Court's April 5, 2021 Order raises questions that go to the very heart of the integrity of the judicial process and which demand answers—answers that can clearly only be had in a different forum in front of a different judge with a different staff given that the entire problem here is the role and function of Alice Keys."

3.) "At this stage, the evidence definitively establishes that Ms. Keys has been inappropriately 'guiding' the respective litigations and looking out for her 'friends,' simply stated. It seems she even decided herself to be the Judge quite frequently, in light of Judge's Orders she effectively managed to change."

4.) "It is now seemingly openly recognized by the various parties that Ms. Keys has been and is in effect quietly representing the interests of those adverse to Mr. Dusing and that such parties can do whatever the hell they want so long as Ms. Keys is in a position to 'direct traffic.'"

5.) "Mr. Dusing well understands that the Presiding Judge has not been aware of the various maneuvering and machinations, and places no blame. The situation is scandalous and scary. *There is no way to explain the timing of the Court's April 5, 2021 Order and the various actors involved in orchestrating it well seem to know that.* There is a simply no excuse whatsoever for the Court not to act at this juncture."

On May 12, 2021, Barrett filed a "(Seventh) Motion for Disqualification of Presiding Judge Based on Third-Party Claims of Outside Influence Relating to Misconduct on the Part of Alice Keys, Vacation of the Court's Order of April 5, 2021 in Light of Objectively Erroneous Finding of Fact Contained Therein and Public Mass Media Dissemination of Same, and Transfer of this Matter to Special Judge." Again, Barret and Dusing signed this motion. It contained the

5

statement: "Very clearly now, the *Bakker v. Dusing* trial was, as suspected all along, decided in advance."

On January 24, 2025, the KBA's Inquiry Commission issued a Charge against Barrett, and she filed an answer on March 10, 2025. At some point thereafter, she and OBC reached an agreement pursuant to SCR 3.480(2) regarding a negotiated sanction.

Pursuant to that agreement, Barrett admits that she violated two counts of SCR 3.130(3.4)(f), which directs that "[a] lawyer shall not. . . present, participate in presenting, or threaten to present criminal or disciplinary charges solely to obtain an advantage in any civil or criminal matter[.]" Barrett concedes that she violated this rule both by filing the February 19 motion to disqualify Dietz and by making the above quoted statements in her May 3, May 11, and May 12 motions. She further admits that the "intemperate tone and the inappropriate language cited by the Inquiry Commission" did not meet the requirements of the Rules of Professional Conduct or the KBA Code of Professional Courtesy. Finally, she recognizes that her subjective belief that the facts alleged in the motion to disqualify Dietz were true does not change the fact that the allegations violated SCR 3.310(3.4)(f) because the motion sought to gain an advantage in an on-going civil matter. *See Kentucky Bar Ass'n v. Blum*, 404 S.W.3d 841, 850 (Ky. 2013) ("In our view, it is 'only marginally consequential whether the target lawyer has in fact behaved unethically.' Rather, the 'focal point here is the purpose of the threat and not the conduct of the lawyer being threatened.'").

6

Barrett further admits that her actions violated one count of SCR 3.130(8.2)(a), which commands that:

> A lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge, adjudicatory officer or public legal officer, or of a candidate for election or appointment to judicial or legal office.

Barrett acknowledges that she violated this rule by making the above quoted statements in her May 3, May 11, and May 12 motions without investigating the matter for herself. She recognizes that she should not have relied upon Dusing's conclusions and that she had an independent responsibility to produce proof of Keys' alleged misconduct beyond the mere coincidence in the timing of the court's rulings during the course of the litigation. She admits it was wrong for her to have signed the May 3, May 11, and May 12 motions.

Barrett asserts in mitigation that she was influenced by Dusing, who was an older and more experienced attorney with whom she was associated in the practice of law. Although she further recognizes that "irrespective of whether she drafted all or portions of these documents, or whether she took the lead or followed Dusing's lead, she is responsible for her actions in so doing." We further note that Barrett has only one prior discipline: a private admonition with conditions issued on November 13, 2024. OBC has not directed this Court to any further mitigating or aggravating factors to consider, and requests that we impose the negotiated sanction of a thirty-day suspension, probated for one year with conditions. OBC offers the cases of *Blum, supra,* and *Kentucky Bar Ass'n v. Waller,* 929 S.W.2d 181 (Ky. 1996) in support of the sanction.

7

In *Waller*, Louis Waller represented a client in a civil matter. *Id.* at 181. During the pendency of the action, the presiding judge granted an injunction and thereafter recused himself. *Id.* After a special judge was appointed, Waller filed a motion to set aside the earlier injunction which contained the following language: "Comes defendant, by counsel, and respectfully moves the Honorable Court, much better than that lying incompetent ass-hole it replaced if you graduated from the eighth grade. . ." *Id.*

Waller participated in the disciplinary proceedings that followed and the KBA ultimately found him guilty of violating one count of SCR 3.130(8.2)(a) and recommended a public reprimand. *Id.* at 182. This Court—noting the "generally scandalous and bizarre" nature of Waller's pleadings in the underlying civil action in conjunction with Waller's overall denial of his accountability—rejected the KBA's proposed sanction and instead suspended Waller from the practice of law for sixth months. *Id.* at 182-83. We reasoned:

> While we have given due regard to the Board's recommendation and would agree if this were an isolated incident of intemperate language accompanied by a meaningful expression of regret, such is not the case. Respondent is utterly unrepentant and apparently intent on convincing this Court of the truth of his assertions. As such, we must impose a punishment of sufficient severity to forcefully inform respondent that he is wrong. Regardless of his personally-held views, if respondent desires to continue practicing law in the Commonwealth of Kentucky, he must conform his professional conduct to minimum acceptable standards.

*Id.* at 183.

In *Blum*, Jeffrey Michael Blum was adjudged guilty of violating one count each of SCR 3.130(3.4)(f), SCR 3.130(3.5)(c), and SCR 3.130(8.2)(a) in relation

8

to his representation of a teacher in a termination dispute that spanned nearly a decade and was litigated in various state and federal forums. 404 S.W.3d at 843. The teacher had been terminated due to an allegation that he had taken inappropriate photographs of one of his female students, and an initial tribunal found him guilty of conduct unbecoming of a teacher. *Id.* Nearly eight years later, the circuit court remanded to a second tribunal upon finding that the instructions given by the hearing officer during the first tribunal were erroneous and that additional mitigating factors should have been considered in assessing the teacher's penalty. *Id.*

This Court held Blum violated SCR 3.130(3.4)(f) by threatening both the school board's attorney, Susan Lawson, and hearing officer Michael Head in order to gain an advantage in the case. *Id.* at 849-52. Blum sent a letter to Lawson while discovery in U.S. District Court was abated pending a scheduling conference that said:

> It is a request for voluntary cooperation in connection with an inquiry that will probably be initiated by the Office of Bar Counsel. I continue to be concerned about the possibility of a continuing violation of the Code of Professional Responsibility by Ms. Lawson, but I also want to be fair to her. . . . But I ask you to consider that your client may be better off overall if she now comes clean with a truthful account of what occurred at Fleetwood [Photo] and makes available for inspection all materials that she now has from Fleetwood [Photo].

*Id.* at 849-50. This Court found that the letter was a violation of SCR 3.130(3.4)(f) as it was a threat of disciplinary proceedings to gain an advantage "namely, an end-run around the court's restrictions placed on the discovery timeline." *Id.* at 851.

9

Hearing Officer Head had ruled that, on remand, the second tribunal was not to take any new evidence and was to instead determine an appropriate penalty after being presented with the same evidence that had been presented to the first tribunal. *Id.* Blum made his outrage at this ruling known, and wrote the following in a motion to alter it:

> Under these circumstances all counsel involved in this hearing as well as the Hearing Officer will be forced to litigate in a manner that will be close to the edge of committing serious ethical improprieties leading to professional discipline. The greatest kindness that all counsel and the Hearing Officer can show toward one another will be to adopt a procedure of identifying clearly in writing at the outset any conduct that will likely cause the filing of disciplinary complaints or imposition of sanctions. This will allow all counsel and the Hearing Officer at least to be able to make an informed decision about whether he wishes to persist in the alleged misconduct and face a likely disciplinary proceeding or sanction. This method of proceeding is presently a legal requirement for any sanctions that the Hearing Officer might wish to impose on counsel. It should by stipulation or order also be made a requirement for attorneys planning to file disciplinary complaints against the Hearing Officer or against one another. The current Hearing Officer inadvertently gives the impression that he may be attempting to frame Petitioner and his current counsel on a bogus offense of breaching a protective order-an offense which, with certain additional stretches of pseudo-legalism, might provide [Harlan County School Board] with an alternate route to winning the case. Although the undersigned has a sufficiently high regard for the current Hearing Officer that he does not believe this would really be contemplated, it is nevertheless appropriate to issue the following caution: at the first whiff of something like this occurring, the undersigned will press charges against the Hearing Officer aimed at securing a lifetime ban on the holding of any judicial position in the United States. This possibility should be closed off with an appropriate modification of the May 10 Order which, for unknown reasons, again places the exhibits under seal.

*Id.* at 851-52. This Court held that this too violated SCR 3.130(3.4)(f).

As for Blum's violation of SCR 3.130(8.2)(a), the Court concluded that "several statements throughout Blum's representation of [the teacher were]

10

completely inappropriate and unsubstantiated[,]" but noted in particular the statements in Blum's federal complaint that Hearing Officer Head: "was involved in a conspiracy to 'cover up ... malfeasance,'" that he "rigged the second hearing by 'refusing to allow any live testimony or tangible evidence,'" that he "converted the second hearing into a 'sham hearing' with the help of others," that he "'defrauded the second tribunal[,]'" and that he was biased were all worthy of discipline. *Id.* at 856.

Finally, the *Blum* Court held that Blum violated SCR 3.130(3.5)(c)—which forbids a lawyer from "[engaging] in conduct intended to disrupt a tribunal"—by his "clear pattern of burdening the judicial process with repetitive and extraneous motions." *Id.* at 852-53.

The *Blum* Court imposed a sanction of a 181-day suspension with conditions based on Blum's three violations. *Id.* at 858. In doing so it explained that several aggravating factors were present, to wit: multiple offenses representing a pattern of misconduct, refusal to acknowledge the wrongful nature of his conduct, his substantial experience in the practice of law, and his previous misconduct of two private admonitions. *Id.* at 857-58 (citing Rule 9.22 of the *American Bar Association's Standards for Imposing Lawyer Sanctions*).

In this case, Barrett has acknowledged her guilt of violating two counts of SCR 3.130(3.4)(f) and one count of SCR 3.130(8.2)(a) and recognizes the wrongfulness of her actions. Given her contrition, in conjunction with her

11

limited disciplinary history, we hereby approve the parties' negotiated sanction and decline to remand for further proceedings. SCR 3.480(2).

This Court hereby ORDERS:

1. Brandy Kathleen Lawrence Barrett is adjudged guilty of violating two counts of SCR 3.130(3.4)(f), and one count of SCR 3.130(8.2)(a)).

2. Barrett shall be suspended from the practice of law for thirty (30) days to be probated for one (1) year subject to the conditions of probation enumerated herein.

3. Barrett shall not be the subject of any future Charge issued by the Inquiry Commission during her one (1) year period of probation.

4. Barrett shall timely pay her Kentucky Bar Association membership dues.

5. Barrett shall timely satisfy all continuing legal education requirements.

6. Pursuant to SCR 3.450(2), Barrett shall pay the certified costs associated with these proceedings totaling $243.70 within ninety (90) days of the entry of this Opinion and Order.

7. If Barrett violates any of the terms of probation stated in this order within one (1) year or receives a Charge of Professional misconduct during the one (1) year probationary period, the OBC may file a motion with the Court requesting the issuance of a show cause order directing Barrett to show cause, if any, why the thirty (30) day suspension should not be imposed.

12

8. If, at the expiration of the probationary period of one (1) year, Barrett has fully complied with the above terms, her suspension and all conditions of her probation shall be terminated.

All sitting. Lambert, C.J.; Conley, Goodwine, Nickell and Thompson, JJ., concur. Keller, J., concur in result only. Bisig, J., dissents without separate opinion.

ENTERED: August 14, 2025.

_____
CHIEF JUSTICE