TO BE PUBLISHED

# Supreme Court of Kentucky

2023-SC-0308-KB

KENTUCKY BAR ASSOCIATION                                    MOVANT

V.                          IN SUPREME COURT

KAYCE RENAE POWELL                                    RESPONDENT

## **OPINION AND ORDER**

Kayce Renae Powell (Powell), Kentucky Bar Association (KBA) Number 93536, was admitted to practice law in the Commonwealth of Kentucky on April 30, 2010.  Her bar roster address is 115 Hammond Plaza, P.O. Box 4, Hopkinsville, KY 42240.

This case stems from two consolidated disciplinary matters, 17-DIS-0121 and 19-DIS-0006.  Both matters were tried together before Trial Commissioner Lisa Johnson (Commissioner).  In 17-DIS-0121, the Commissioner ruled that Powell violated four Supreme Court Rules (SCR) that govern attorney misconduct: Count I - SCR 3.130(3.4)(f), Count II – SCR 3.130(8.2)(a), Count III – SCR 3.130(3.5)(d), Count IV – SCR 3.130(8.1)(b).  Powell was likewise found guilty of four violations in 19-DIS-0006: Count I – SCR 3.130(1.3), Count II – SCR 3.130(1.4)(a) and (b), Count III – SCR 3.130(1.6), and Count IV – SCR 3.130(1.16)(d).

The KBA's Board of Governors (Board) adopted the Commissioners findings and conclusions and has unanimously recommended that Powell be suspended from the practice of law for one year, that she provide a detailed accounting of all hourly fees expended on behalf of the complainant in 19-DIS-0006, and that she return any unearned fees. After review, this Court accepts the Board's recommendation.

## I. BACKGROUND

### A. 17-DIS-0121

This case is related to Powell's representation of Steve Chandler (Chandler) to contest his brother Keith's will in Crittenden Circuit Court. Powell filed the suit in October 2011, alleging lack of mental competency, undue influence, unnatural disposition, and an equity claim asserting Chandler's 50% vested interest in the residence. Her theory of the case was that the defendants, whom Keith met at work, took advantage of his diminished mental capacity and improperly influenced him to bequeath the Chandlers' multi-generational family farm to them. Keith did so in his will, which was executed on October 26, 2006.

The case was assigned to Judge Renee Williams (Judge Williams), and Keith's estate was initially represented by Brucie Moore (Moore). Soon after the case was filed, Moore filed a motion to strike most of Chandler's complaint. In April 2012, following a hearing, Judge Williams granted Moore's motion to strike; Powell characterizes the ruling as striking "60%" of Chandler's complaint including his equity claim. Then, in August 2012, Judge Williams

2

ruled that no evidence outside the two years prior to the execution of Keith's will would be admissible at trial.

In May 2013, Powell filed a motion for Judge Williams' recusal pursuant to KRS 26A.015 primarily based on her orders striking most of Chandler's complaint and limiting the evidence to within two years of the execution of Keith's will. Judge Williams denied the motion. In October 2013, Powell filed a second motion for Judge Williams' recusal, this time in this Court, which was denied. Powell and Chandler also each filed judicial conduct commission (JCC) complaints against Judge Williams in late 2013 and again in 2017. In March 2014, as the case neared trial, Moore withdrew as the estate's representative and attorney Steven Downey (Downey) entered his appearance.[1] Powell would ultimately file KBA complaints against Attorneys Moore and Downey as well as a civil suit.

In April 2014, following trial, the jury rendered a verdict against Chandler. Around this time, Powell reported the alleged misconduct of opposing counsel and Judge Williams to the Governor's office and eventually the FBI. None of the complaints filed against Judge Williams or Attorneys Moore and Downey resulted in any disciplinary or criminal charges being issued against them. Powell's reports to the Governor's office and FBI likewise bore no fruit.

---

[1] According to Powell, Moore drafted Keith's will and would therefore be a material witness at trial. Powell had attempted to have her removed as counsel of record long before she withdrew for the same reason.

3

Following the jury verdict, Powell appealed the case to the Court of

Appeals and filed numerous motions to recuse resulting in the recusal of six

judges on that court. The three-judge panel that ultimately heard the case

affirmed it in full. Following the Court of Appeals' adverse ruling, Powell filed a

petition for reconsideration (PFR) which contained the following statements:

> This Court should first be aware that all filings and recordings of
> both [the] COA and the lower courts have been turned over to the
> Governor's Office. Which prompted a telephone conversation [with]
> a (DOJ) United States District Attorney. Thereafter, Counsel
> received a call from Federal Bureau Investigator (sic) Special Agent
> Dustin Deterding. There is currently an active FBI Investigation
> concerning these matters which include the previously stricken
> material (i.e. wire fraud).
>
> . . . .
>
> Unlike all other appeals concerning a will contest which address
> the admissibility of testimony and evidence, this Court's primary
> purpose seems to have been to protect the rulings and reputation
> of Judge [Renee] Williams and the defense attorneys of record.
>
> . . . .
>
> There are far too many misconstrued, inaccurate and disregarded
> arguments within the Order, to simply be a mistake. The COA
> Order shows a far greater concern to protect the reputation of the
> trial judges and defense attorneys rather than the civil rights and
> liberties afforded to the Appellant. Considering the active FBI
> investigation, Counsel wishes to encourage the sitting Judges to
> take another look at the totality of the record.

After the Court of Appeals denied Powell's PFR, she filed a petition for

discretionary review with this Court. Of note, the petition argued:

> The Movant has been denied his Constitutional substantial rights
> from start to finish. The COA opinion is no exception, and in fact
> various rulings of the COA [have] served to facilitate and
> perpetuate a continuous fraud on the court throughout, by
> striking and covering up Respondent's Attorney's false filings, and
> illegal fraudulent conduct.

4

In response to Powell's behavior, in particular the disparaging and threatening arguments directed at the Court of Appeals that she made in her PFR, the Court of Appeals reported Powell to the KBA. On May 4, 2018, the Office of Bar Counsel (OBC) via its attorney Sarah Coker (Coker) sent Powell an investigative letter regarding the concerns raised by the Court of Appeals. The letter made it clear that no complaint had been filed but requested a written response to the concerns raised. Powell subsequently requested, and was granted, two extensions of time to respond. She ultimately responded to the investigative letter on June 24, 2018, with a letter and seven "books" of information spanning well over 1,900 pages.

On November 15 of that year, the Inquiry Commission (IC) filed a complaint against Powell. On December 26, Powell requested an extension of time to respond, citing a recent surgery, which the IC granted on January 14, 2019. The order granting Powell's extension directed that she had until February 8 to respond to the complaint. Powell never responded to the complaint, but she nevertheless sent a letter to Coker on February 5 expressing her personal reservations about the matter being assigned to Coker.[2] The IC filed the charges at issue herein on May 14, 2019.

---

[2] Powell stated in the letter that she did not want the case to be assigned to Coker because the information she provided in her response to the investigatory letter should have "unequivocally dispelled any notions of wrongdoing" and "should have resulted in disciplinary investigations and actions against all parties who had actual knowledge and participated in the most egregious injustice by the judiciary[.]"

Following a hearing and post-hearing briefing by the parties, the Commissioner found a violation of each Count to be supported by a preponderance of the evidence.

**Count I** alleged a violation of SCR 3.130(3.4)(f): "A lawyer shall not . . . present, participate in presenting, or threaten to present criminal or disciplinary charges solely to obtain an advantage in any civil or criminal matter[.]" As proof of this violation, the Commissioner pointed to the following evidence: after Powell lost her case in circuit court, she contacted the Governor's office and the FBI; she filed KBA complaints against Attorneys Moore and Downey; she and her client filed more than one JCC complaint against Judge Williams; she filed numerous motions to recuse concerning both Judge Williams and several Court of Appeals judges; and she used "threatening" language in PFR before the Court of Appeals. Moreover, Powell stated several times during the hearing that her intent behind these actions was to get her client a new trial. The Commissioner therefore felt her behavior fell squarely within *Kentucky Bar Ass'n v. Blum*,[3] and a violation of SCR 3.130(3.4)(f) had occurred.

In *Blum*, Attorney Blum filed a motion to have a hearing officer alter his order establishing the procedure for a tribunal hearing.[4] In the motion, Blum stated "it is nevertheless appropriate to issue the following caution: at the fist whiff of something like this occurring, the undersigned will press charges

---

[3] 404 S.W.3d 841 (Ky. 2013).

[4] *Id.* at 851.

against the Hearing Officer aimed at securing a lifetime ban on the holding of any judicial position in the United States."[5] This Court upheld the trial commissioner's finding that a violation of SCR 3.130(3.4)(f) had occurred, holding that "Blum, acting under the guise of concern for his fellow attorneys, maintained the possibility of disciplinary sanctions or proceedings at the forefront of his court filings and communications in an attempt to get what he wanted—the relitigation of the charges against [his client.]"[6]

**Count II** alleged a violation of SCR 3.130(8.2)(a): "A lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge[.]" The Commissioner noted the "outright accusations of judicial misconduct" contained in Powell's PFR before the Court of Appeals and petition for discretionary review to this Court. Additionally, during the hearing Powell was pressed by the Commissioner as to whether she had specific, objective evidence of an illegal conspiracy between Attorneys Moore and Downey and Judge Williams or evidence of Judge Williams' alleged bias against her. Powell conceded she did not and did not call any witnesses to substantiate those allegations.

The Commissioner found that a sanction was accordingly warranted under *KBA v. Waller*.[7] In *Waller*, an attorney called a judge a "lying

---

[5] *Id.* at 852.

[6] *Id.*

[7] 929 S.W.2d 181 (Ky. 1996).

7

incompetent ass-hole" in a memorandum supporting his motion to dismiss, and this Court upheld the Board's finding that Waller violated SCR 3.130(8.2)(a).[8]

**Count III** alleged a violation of SCR 3.130(3.5)(d): "A lawyer shall not . . . engage in conduct intended to disrupt a tribunal." The Commissioner found that Powell violated this rule, first, by repeatedly filing the same pleadings over a seven-year period. In support, the Commissioner cited Powell's response letter to the OBC's investigation letter in which she stated "[a]s you will come to see, I filed the same information repeatedly throughout all seven years of litigation[,]" as well as the heading of "Book 2" that Powell filed in response to the investigation letter, which said

> Steve Chandler's complaint remained the same from start to finish. As early as the initial probate court, Steve informed that judge that not everything in the house belonged to his brother and that he never received his share of the estate. Steve's story didn't change in the slightest. The same arguments against Judge Williams' strike order and extremely narrow interpretation of relevant law remained the same throughout, making the exact same arguments from 2011 until December of 2014.

The Commissioner found that these statements, in conjunction with the fact that many of Powell's filings were returned for deficiencies, that she requested the Court of Appeals to take unusual or uncommon steps,[9] that she sought at both the circuit court and Court of Appeals level to have several judges

---

[8] *Id.* at 182.

[9] The concluding paragraph of Powell's reply brief to the Court of Appeals states: "Appellant respectfully requests that this Court reverse the jury verdict, and in an unprecedented manner declare the will void, or in the alternative reverse and remand this cause of action[.]"

recused, and that she filed a civil case against opposing counsel, "had the obvious effect of burdening the Court system[.]"

**Count IV** alleged a violation of SCR 3.130(8.1)(b): "[A] lawyer in . . . in connection with a disciplinary matter, shall not . . . knowingly fail to respond to a lawful demand for information from [a] . . . disciplinary authority[.]" During the hearing, Powell acknowledged that she received the IC complaint and had requested an extension of time. However, she claimed that she never received the January 2019 order granting her an extension and assumed that the matter had been dropped. The Commissioner found Powell's belief was not reasonable and that she therefore violated the rule.

### B. 19-DIS-0006

This case stems from Powell's representation of Angella Linton (Angella) in a dog bite case. During the relevant time, Angella's daughter-in-law Cindy Linton (Cindy) was Powell's legal assistant, and Powell agreed to take the case as a favor to Cindy. Powell met with Angella on July 24, 2017, to discuss her case and entered into a one-page retainer agreement on the same day. Under the retainer agreement, Angella agreed to pay Powell a $1,500.00 "non-refundable" retainer fee to be "billed out at a 10 minute rate for $15 or an hourly rate of $100." The retainer agreement does not state that the fee to file the case may be paid out of the retainer fee.

Powell filed Angella's case in Trigg Circuit Court on August 16, 2017. She conducted pre-trial practice in the case until March 2018; she served and answered interrogatories and obtained an order to compel discovery. During

9

this period Powell predominately communicated with Angella about the case "through Cindy," and acknowledged only speaking on the phone with Angella about the case once or twice between August 2017 and March 2018. Additionally, Powell never provided Angella with any monthly or periodic accounting of her fees, but she did provide Angella with a receipt for the $400.00 filing fee.

Sometime in mid-April 2018, Powell closed her private practice and accepted a job with the Cabinet for Health and Family Services. Powell claimed, without supporting documentation, that she was given permission by the Cabinet to continue working on a handful of the unfinished cases from her private practice, including Angella's. But at some point she concluded that she would not have sufficient time to devote to Angella's case. Nevertheless, she had already discussed Angella's case with another attorney, Steve Underwood (Underwood), in February or March 2018 and requested that he take it.[10] Powell gave Angella's case file to Underwood on July 26, 2018. After reviewing the file Underwood decided not to take the case, and he never filed an entry of appearance. Powell claimed to be unaware that Underwood had never filed an appearance until November 2018.

Powell never sent any written communication to Angella to inform her that she was closing her practice. But, she claimed that during a seventeen-

---

[10] The evidence was contradictory as to whether Powell intended to remain counsel of record and work on the case alongside Underwood or completely relinquish the case to him.

minute phone call in May 2017 she explained to Angella that she had obtained new employment and would not be able to devote sufficient time to Angella's case, that she asked Underwood to look at the case and he may decide to represent her and discussed confidentiality. Angella testified that she did not remember this phone call and, at any rate, Powell acknowledged that Angella never signed a written agreement consenting to her speaking with Underwood about the case or to allowing him to review her case file. Angella was not made aware that Powell had discussed her case with Underwood or that she had given him her case file until December 2018. Angella terminated Powell's representation around late January or early February 2019 and hired a new attorney who filed an entry of appearance in February 2019.

Angella filed a bar complaint against Powell in January 2019, and a formal charge was subsequently issued on May 24, 2019, asserting the counts at issue herein. Following the consolidated hearing, the Commissioner found that a violation of each of the counts was supported by a preponderance of the evidence.

**Count I** alleged a violation of SCR 3.130(1.3): "A lawyer shall act with reasonable diligence and promptness in representing a client." To support her finding that this rule was violated, the Commissioner cited the fact that Powell was unaware that Underwood had not filed an entry of appearance in Angella's case until November 2018; that she never sent any written communication to Angella informing her that she was closing her practice; and that she communicated with her client about the case almost exclusively through

11

Cindy. The Commissioner found that the following testimony succinctly

confirmed Powell's violation of the rule:

> **TC[11]:** [. . .] You assumed that Mr. Underwood was taking care of the case in October [2018]; is that correct?
>
> **Powell:** Yes. I actually did after conversation with Mr. Courtney's office.
>
> **TC:** Okay. So then what happened when you called Mr. Underwood?
>
> **Powell:** When you say taking care of the case?
>
> **TC:** Yeah.
>
> **Powell:** And that's where the confusion gets. I never handed the case over to just Mr. Underwood. I always fully intended to continue the case with him.
>
> **TC:** *But you weren't working on the case at that point because—*
>
> **Powell:** *Nobody was* because [opposing counsel] never answered anything.[12]

The Commissioner found that "that of course is EXACTLY the problem, given

that Ms. Powell closed her office in March 2018."

> **Count II** alleged a violation of SCR 3.130(1.4)(a) and (b):
>
> (a) A lawyer shall:
>
> > (1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0(e), is required by these Rules;
> > (2) reasonably consult with the client about the means by which the client's objectives are to be accomplished;
> > (3) keep the client reasonably informed about the status of the matter;

---

[11] Trial Commissioner.

[12] (Emphasis added).

(4) promptly comply with reasonable requests for information; and

(5) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Rules of Professional Conduct or other law.

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

First, the Commissioner noted that Angella provided Powell her physical address and telephone number on their retainer agreement and that her contact information never changed. Yet, Angella testified that she had difficulty communicating with Powell during the representation and had to rely on Cindy to obtain and relay information. Moreover, even though Powell received several text messages from Cindy beginning in April 2018 expressing Angella's distress at receiving no communication from Powell about her case and requesting that Powell contact Angella, she did not do so until November 2018. Powell's only explanation for this was that she did not have Angella's phone number.

Second, during her testimony, Powell indicated she intended to either have a fee-splitting arrangement with Underwood or work on the case for free. But neither the decision to involve another attorney nor a proposed change in the fee structure was discussed with Angella beforehand. In that vein, Powell failed to communicate with Angella regarding fees by never providing her with an accounting of how the fees were disbursed. And, there was an issue raised regarding paying the filing fee for the case out of her retainer which was not expressly provided for in the retainer agreement.

13

The Commissioner concluded that *Kentucky Bar Ass'n v. Hatcher*[13] supported the finding of a violation. In *Hatcher*, the attorney refused to return her clients' phone calls and did not keep them informed about their case, and this Court upheld the Board's finding that she violated SCR 3.130(1.4)(a) and (b).[14]

**Count III** alleged a violation of SCR 3.130(1.6): "A lawyer shall not reveal information relating to the representation of a client unless the client gives informed consent[.]" The Commissioner found that this rule was violated by Powell discussing Angella's case with Underwood and giving him her case file prior to obtaining Angella's express consent to doing so.

**Count IV** alleged a violation of SCR 3.130(1.16)(d):

> Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred.

The Commissioner found that Powell violated this rule by effectively withdrawing from the representation in a way that did not protect Angella's interests, by failing to give Angella reasonable notice that she should find other counsel, and by not refunding any unearned fees. Angella's fees have never been itemized, and any unearned fees should have been returned to her after

---

[13] 929 S.W.2d 193 (Ky. 1996).

[14] *Id.* at 193.

the representation was terminated, and a failure to do this alone constituted a violation of the rule.

## C. Sanctions

To determine an appropriate sanction, the Commissioner considered several relevant factors under the ABA Standards for imposing lawyer sanctions, including: the lawyer's mental state, evaluation of the duties violated, the actual or potential injury to the client, and the existence of aggravating or mitigating factors.[15]

The Commissioner found that Powell acted knowingly. She further found that in 17-DIS-0121, Powell violated duties she owed as a professional by recklessly and repeatedly questioning the integrity of multiple Kentucky judges and either used or threatened to use disciplinary and criminal proceedings to gain an advantage in her client's case. She further found that Powell's seven year "war of attrition" disrupted the normal workings of the court. In 19-DIS-0006, the Commissioner found that Powell violated duties owed to Angella by failing to act diligently on her behalf, failing to respond to repeated attempts to communicate with her, sharing her confidential information, effectively abandoning her case, and by failing to account for fees earned or return any unearned fees.

---

[15] *See, e.g.*, *Wells v. Kentucky Bar Ass'n*, 508 S.W.3d 101, 103 (Ky. 2017) ("[A]lthough not binding, the ABA Standards 'can at times serve as persuasive authority'.").

15

Concerning the actual or potential injuries to her clients, the Commissioner acknowledged that not much was known about Chandler because Powell did not respond to the subpoena requesting his representation agreement. However, much was known about Angella, a "very sweet and very kind" 80-year-old woman on a fixed income who testified that $1,500 "[meant] a lot to her." Angella also testified that she was unfamiliar with legal concepts and put her full trust in Powell. These facts also went to Angella's vulnerability as an aggravating factor.

The Commissioner found that several other aggravating factors were also present. First, Powell committed multiple offenses in each case. In addition, the Commissioner found that she acted with a dishonest or selfish motive, citing her apparent personal animus against Judge Williams, and Attorneys Moore and Downey. This distain was fostered by Powell's belief that they "demeaned" her, made her out to be a "clown," made her look bad, and "belittled" and "chastised" her. The Commissioner was also struck by the number of times Powell lamented about Downey getting "the last word," and noted ten times in the record that it occurred. The Commissioner concluded based on this evidence that Powell's primary motive was to be vindicated and prevail over people she felt had demeaned her.

Powell also refused to acknowledge the wrongful nature of her conduct. She repeatedly characterized the disciplinary actions against her as a conspiracy, especially those in 17-DIS-0121 (the will contest). She continued to believe she had done nothing wrong and, instead, that the "high

16

connections" of the parties involved were trying to "kill the messenger." She felt the KBA was "really pressing hard and trying to bully [her] into saying that [she] was wrong for questioning the integrity of [Judge Williams] and the Court of Appeals." Furthermore, in a hypothetical posed to her by the Commissioner, she was unable to even consider that she might be wrong.

Based on the foregoing, the Commissioner recommended that Powell be suspended from the practice of law for one year and that she provide a detailed accounting of all hourly fees expended on Angella's behalf and return any unearned fees immediately. The Commissioner noted that the $400 filing fee could not be deducted from the retainer amount because the retainer fee did not provide for it.

Powell then appealed the Commissioner's ruling to the Board.

**D. The Board**

Following oral arguments, the Board held by a vote of 20-0 that the Commissioner's report was supported by substantial evidence and was not clearly erroneous as a matter of law.[16] It recommended that this Court find her guilty of all eight violations across both disciplinary cases. It further recommended that we impose both sanctions recommended by the Commissioner and, additionally, that the costs of the proceeding, totaling $11,723.08, should be assessed against Powell pursuant to SCR 3.450.

## II. ANALYSIS

---

[16] *See* SCR 3.370(5)(a)(i).

17

Powell requests that this Court "absolve her of any wrongdoing, unprofessional or unethical conduct, and find her not guilty of violating the counts as charged." In the alternative, she asks this Court to reverse the Board and the Commissioner and "remand this matter to the KBA Disciplinary Clerk for appointment of a new Trial Commissioner and a fair and impartial hearing[.]" The KBA argues that we should uphold both decisions, and that both the ABA Standards and case law support the imposition of a one year suspension.

To begin, we note that Powell has provided no relevant argument or evidence concerning her charges in 17-DIS-0121. Rather, she continues to allege that Judge Williams, Attorneys Moore and Downey, and the Court of Appeals illegally conspired against herself and her client, and that all her actions were warranted. Regarding 19-DIS-0006, her only argument is that she obtained Angella's permission to involve Underwood in her case during the seventeen-minute May 2018 phone call. This argument ignores the fact that Powell acknowledged speaking to Underwood about Angella's case, a confidential matter, in February or March 2018 without first obtaining Angella's prior approval. It also ignores Angella's testimony that she was completely unaware that Powell had involved another attorney or had given him her case file until November of that year. Apart from this, Powell asserts no relevant arguments in support of her innocence.

18

With that said, based upon our independent review of the record and findings of fact,[17] this Court holds that Powell violated Count I - SCR 3.130(3.4)(f), Count II – SCR 3.130(8.2)(a), Count III – SCR 3.130(3.5)(d), and Count IV – SCR 3.130(8.1)(b) in 17-DIS-0121, and Count I – SCR 3.130(1.3), Count II – SCR 3.130(1.4)(a) and (b), Count III – SCR 3.130(1.6), and Count IV – SCR 3.130(1.16)(d) in 19-DIS-0006 based on the facts cited and thorough reasoning provided by the Commissioner.

As Powell's guilt has been established, our task is now to determine whether a one-year suspension is appropriate.[18]  We conclude that the ABA Standards, as well as this Court's case law, warrant a one-year suspension.

The ABA Standards, Section 4.42 provides that "[s]uspension is generally appropriate when: (a) a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client; or (2) a lawyer engages in a pattern of neglect and causes injury or potential injury to a client."  As noted, Powell effectively abandoned Angella's representation after March 2018 and refused to respond to her requests for communication.  This caused Angella emotional distress, negatively affected her financially, and could have resulted in her case being dismissed for a failure to prosecute.

Section 7.2 of the Standards states that "Suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional and causes injury or potential injury to a client,

---

[17] *Kentucky Bar Ass'n v. Greene*, 386 S.W.3d 717, 722 (Ky. 2012).

[18] *Id.*

19

the public or the legal system." In addition to the potential and actual harm caused to Angella, Powell also repeatedly asserted unfounded accusations of unethical conduct towards opposing counsel, Judge Williams, and the Court of Appeals. She also admitted that she filed the same argument repeatedly over a seven-year period in the circuit court. These actions unnecessarily burdened the legal system.

We agree with the Commissioner's conclusion that Powell acted knowingly and violated duties she owed to both her client Angella and the duties she owed as a professional. We also agree with the Commissioner's finding of aggravating factors, including multiple offenses, refusal to acknowledge the wrongful nature of her conduct, and the vulnerability of her client Angella. However, we note that the Commissioner did not consider Powell's lack of prior discipline in mitigation.

But, as the Standards are merely advisory, we primarily look to our case law to determine the appropriateness of a one-year sanction. The KBA cites *Waller, Blum, Kentucky Bar Ass'n v. Matthews*,[19] and *Coorssen v. Kentucky Bar Ass'n*[20] in support of the one-year suspension.

As noted, in *Waller* an attorney successfully obtained the recusal of a judge whom he thereafter called a "lying incompetent ass-hole" in a memorandum he filed with the court.[21] The Board found him guilty of violating

---

[19] 283 S.W.3d 741 (Ky. 2009).

[20] 266 S.W.3d 237 (Ky. 2008).

[21] *Waller*, 929 S.W.2d at 181.

SCR 3.130(8.2)(a) and recommended a public reprimand.[22] This Court rejected

the Board's recommended sanction and imposed a six month suspension,

reasoning:

> While we have given due regard to the Board's recommendation
> and would agree if this were an isolated incident of intemperate
> language accompanied by a meaningful expression of regret, such
> is not the case. Respondent is utterly unrepentant and apparently
> intent on convincing this Court the truth of his assertions. As
> such, we must impose a punishment of sufficient severity to
> forcefully inform respondent that he is wrong.[23]

In *Blum*, this Court found the attorney guilty of three charges in relation

to a single disciplinary case.[24] The *Blum* Court held that he violated SCR 3.130

3.130(3.4)(f) by threatening to press disciplinary charges solely to gain an

advantage in his client's case; that he violated SCR 3.130(3.5)(c) by making

unsubstantiated and unrelated allegations to the case and by "multiplying the

proceedings unreasonably and vexatiously" resulting in needless delay and

unnecessary expense; and that he violated SCR 3.130(8.2)(a) by alleging that

the hearing officer conspired against his client, was incompetent, and by

asserting that the hearing was "rigged."[25]

The attorney would not acknowledge his wrongdoing and, citing *Waller*,

the *Blum* Court felt it necessary to "impose a punishment of sufficient severity

---

[22] *Id.* at 182.

[23] *Id.* at 183.

[24] 404 S.W.3d at 844.

[25] *Id.* at 858.

to forcefully inform Blum that he [was] wrong[.]"[26]  The Court therefore adopted

the Board's recommended sanction of a 181-day suspension.[27]

*Matthews* involved two consolidated disciplinary cases.[28]  In the first

case, the attorney was paid $1,000 to represent the client in a civil matter.[29]

The attorney filed the claim, but thereafter he stopped all communication with

the client.[30]  The client never received a refund, and her case file was not

returned.[31]  The attorney failed to file a response to the disciplinary charges

that followed and was found guilty of five violations: SCR 3.130(1.3), SCR

3.130(1.4)(a), SCR 3.130(1.16)(d), SCR 3.130(3.4)(c), and SCR 3.130(8.1)(b).[32]

The second case involved similar conduct; after he was paid $1,000 to work on

a civil case and filed the suit, he ceased communicating with his clients and his

failure to perform any work in the case resulted in the case being dismissed.[33]

He again failed to respond to the resulting disciplinary charges and was found

guilty of the same five counts as the first disciplinary case.[34]  This Court

upheld the findings of guilt in both cases.[35]  After noting that the attorney was

---

[26] *Id.* at 857.

[27] *Id.*

[28] 283 S.W.3d at 741-42.

[29] *Id.* at 741.

[30] *Id.*

[31] *Id.*

[32] *Id.* at 742.

[33] *Id.*

[34] *Id.*

[35] *Id.*

already serving a suspension for failure to pay bar dues, this Court imposed a suspension from the practice of law for 181 days.[36]

The final case, *Coorssen*, also involved two consolidated disciplinary cases.[37] In the first case, the attorney was paid $5,000 to represent the client in a criminal matter.[38] During the representation the attorney failed to return numerous calls from the client regarding the case and failed to properly communicate with the client in a way that would enable the client to make informed decisions.[39] In addition, once the representation ended, the attorney initially failed to refund the client's unearned fees and failed to return the client's file.[40] The attorney was charged with violating SCR 3.130(1.4)(a) and (b) as well as SCR 3.130(1.16)(d).[41]

In the second case, the attorney was paid $2,200 to represent the client in a dissolution of marriage action.[42] He failed to diligently represent the client by failing to inform her about mediation scheduling and not returning her phone calls or keeping her updated about the case.[43] Additionally, the attorney was suspended at some point during the representation but, following the suspension, he failed to properly inform the client in writing that he had been

---

[36] *Id.* at 743.

[37] 266 S.W.3d at 238-40.

[38] *Id.* at 238.

[39] *Id.* at 240.

[40] *Id.*

[41] *Id.*

[42] *Id.*

[43] *Id.*

suspended, failed to properly withdraw from the representation, and failed to return her unearned fees.[44] He was charged with violating SCR 3.130(1.3), SCR 3.130(1.4)(a) and (b), SCR 3.130(1.16)(d), SCR 3.130(3.4)(c), SCR 3.130(1.15)(b), and SCR 3.130(8.3)(c).

Before this Court, the attorney admitted that he committed all eight of the violations and agreed to the imposition of a sanction.[45] This Court suspended him from the practice of law for one year, with 181 days to be served and the remainder probated for two years subject to several conditions.[46]

Based on the foregoing considerations under the ABA Standards and the relevant case law, we agree that a one year suspension is an appropriate sanction in the case before us.

Accordingly, it is hereby ORDERED:

(1) Kayce Renae Powell is suspended from the practice of law in the Commonwealth of Kentucky for one (1) year;

(2) Powell shall provide a detailed accounting of all hourly fees expended of behalf of Angella Linton and refund any unearned fees. In conducting that accounting, the $400 filing fee shall not be deducted from the retainer amount;

(3) Pursuant to SCR 3.450, Powell shall pay all costs associated with these disciplinary proceedings against her and for which execution may issue from this Court upon finality of this Opinion and Order;

(4) As required by SCR 3.390, Powell shall within twenty (20) days after the issuance of this Opinion and Order, notify by letter duly placed

---

[44] *Id.* at 240-41.

[45] *Id.* at 241.

[46] *Id.*

24

with the United States Postal Service, all courts or other tribunals in which she has matters pending, and all clients of her inability to represent them and of the necessity and urgency of promptly retaining new counsel. Powell shall simultaneously provide a copy of all such letters of notification to the Office of Bar Counsel. Likewise, Powell shall immediately cancel any pending advertisements, to the extent possible, and shall terminate any advertising activity for the duration of the term of suspension.

All sitting. All concur.

Entered: October 26, 2023.

_____
CHIEF JUSTICE

25